IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| TORRAY BAYLOR, *et al.*, | * | |
| *Plaintiffs*, | * | Civil Action No. 1:19-cv-1195-RDB |
| v. | * | |
| HOMEFIX CUSTOM REMODELING CORPORATION, *et al.* | * | |
| | * | |
| *Defendants*. | | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANT HOMEFIX CUSTOM
REMODELING CORPORATION'S PARTIAL MOTION TO
DISMISS PLAINTIFFS' CLASS AND COLLECTIVE ACTION COMPLAINT**

Defendant Homefix Custom Remodeling Corporation ("Homefix"), through its undersigned counsel, and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, submits the following Memorandum of Points and Authorities in support of its Partial Motion to Dismiss Plaintiffs' Class and Collective Action Complaint.

**I.    INTRODUCTION**

Plaintiffs' Class and Collective Action Complaint ("Complaint") spans 48-pages and asserts eight separate counts. The Complaint focuses almost entirely on one-topic: unpaid wages. Indeed, Counts I–VII of the Complaint all assert various unpaid wage claims. However, Plaintiffs have also included one count (Count VIII) asserting a speculative allegation of race discrimination on the basis that Plaintiffs are "not white."[1] Pursuant to Count VIII, Plaintiffs seek the Court's certification of a "non-white class," consisting of "each non-white individual who worked to

---

[1] Count VIII is asserted only against Defendant Homefix, and is not asserted against the individual defendants.

develop leads for Homefix[.]"[2] However, Plaintiffs' race discrimination claim is devoid of the requisite factual support, which is the basis for Homefix's instant Motion.

The race discrimination claims alleged by Plaintiffs—premised upon being "not white"—are frivolous on their face and plainly intended to harass Homefix, while Plaintiffs' counsel incurs attorneys' fees that they hope to later shift onto Homefix. Taking their allegations as true, Plaintiffs have failed to allege a colorable claim of race discrimination by Homefix. Since neither Plaintiffs nor any hypothetical similarly situated plaintiff can plausibly state a claim that Homefix engaged in race discrimination, Plaintiffs' claims in Counts VIII of the Complaint must be dismissed with prejudice.

## II. STANDARD OF REVIEW

Homefix requests that the Court dismiss Plaintiffs' Count VIII, alleging employment discrimination, for failure to state a claim pursuant to the Federal Rules of Civil Procedure. Under Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P 8(a)(2). Rule 12(b)(6) authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Supreme Court's opinions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "require that complaints in civil actions be alleged with greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). In the employment discrimination context, this pleading

---

[2] ECF 1, ¶ 163.

2

standard should not be "onerous." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 764 (4th Cir. 2003). The Supreme Court has indicated that an employment discrimination plaintiff need not plead particular facts *conclusively* satisfying each element of a prima facie case. *Swierkiewicz v. Sorema*, 534 U.S. 506 (2002).[3] *Swierkiewicz*, however, did not abrogate the requirement that the plaintiff allege "facts *sufficient* to state *all* the elements of her claim." *Bass*, 324 F.3d at 765 (emphasis added); *see Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (explaining that *Swierkiewicz* does not nullify the heightened pleading requirements of *Twombly* and *Iqbal*); *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002) ("[T]he Supreme Court's holding in *Swierkiewicz v. Sorema* did not alter the basic pleading requirement that a plaintiff set forth facts sufficient to allege each element of his claim" (internal citation omitted)).

Even with the degree of flexibility arguably given to employment discrimination plaintiffs, the court must consider whether a plaintiff's complaint has met the plausibility requirement *Twombly* and *Iqbal*. *See Miller v. Carolinas Healthcare System*, 561 Fed.Appx. 239, 241 (4th Cir. 2014) (explaining that, in the Fourth Circuit, "*Swierkiewicz* left untouched the burden of a plaintiff to allege facts sufficient to state all elements of her claim" (internal quotation marks and citation omitted)). In making this assessment, a court must "draw on its judicial experience and common sense" to determine whether the pleader has stated a plausible claim for relief. *Iqbal*, 556 U.S. at 679. "At bottom, a plaintiff must nudge [its] claims across the line from conceivable to plausible to resist dismissal." *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) (internal quotation marks omitted).

---

[3] Although the general 12(b)(6) standard used in *Swierkiewicz* was overruled by *Twombly*, *see Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009), the analysis cited here remains good law. *Reed v. Airtran Airways*, 531 F.Supp.2d 660, 666 (D.Md. 2008).

3

## III. STATEMENT OF FACTS[4]

Homefix is "in the residential remodeling business . . . sell[ing] and perform[ing] remodeling services relating to windows, roofing, siding, doors, gutters, and insulation." ECF 1, ¶ 26. Plaintiffs performed services for Homefix as Lead Developers, charged with "developing 'leads' for Homefix sales representatives." *Id.* at ¶¶ 2, 27–38.

Plaintiffs allege that Lead Developers are recruited by Homefix online, through flyers, and "at colleges, homeless shelters, outside of probation offices, and even at a Burger King restaurant." *Id.* at ¶ 28. In their scant allegations of race discrimination,[5] Plaintiffs simply allege that they are all "not white." ECF 1, ¶¶ 14–17, 209 ("Plaintiffs and members of the non-white Class are Black, Latinx[6], *or otherwise not white*") (emphasis added). Plaintiffs allege that Homefix engages in race-based "segregation" (¶¶ 8, 211) and that the "Individual Defendants[7] . . . [direct the] non-white Lead Developers [to] canvas predominantly non-white neighborhoods." *Id.* at ¶ 136. Continuing, the Complaint purports to identify isolated and subtle examples of supposed race discrimination, which Plaintiffs' use to rationalize their allegation that being "white" or "non-white" is the primary factor used by Homefix in determining the assignments of Lead Developers at "trade shows" (*Id.* at ¶ 137) and on canvassing routes (*Id.* at ¶ 138).

---

[4] For the purposes of this Motion only, the allegations of the Complaint are taken as true, and all reasonable inferences are construed in Plaintiffs' favor. *See, e.g.*, *Tobey v. Jones*, 706 F.3d 379, 383 (4th Cir. 2013).

[5] As noted, the vast majority of Plaintiffs' allegations are plead for the purpose of supporting their seven separate counts claiming unpaid wages. *See e.g.*, *id.* at ¶¶ 2–7, 22–25, 29–135, 143–162, 169(a–g), 173–207.

[6] None of the four Plaintiffs allege that they are "Latinx." Moreover, the Complaint does not allege that *any* Lead Developers employed by Homefix were Latinx.

[7] As noted, Plaintiffs assert Count VIII only against Defendant Homefix and not against the individual defendants. However, in the context of their unpaid wage claims, Plaintiffs have asserted claims of individual liability against the following employees of Homefix: (1) Tope Lala, President; (2) Adam Shampaine, Chief Executive Officer; and (3) Keith Sinnott, Senior Vice President and Chief Marketing Officer. *Id.* at ¶¶ 1, 22–24. Throughout the Complaint, Plaintiffs refer to the three aforementioned individuals collectively as "Individual Defendants." *Id.* at ¶ 1. Throughout the Complaint, Plaintiffs lodge allegations of very specific incidents or statements, including at times reciting verbatim quotes (*see e.g.*, ¶ 138, quoting Individual Defendants as issuing the directive to "send 'all the white guys out to Sterling'"), yet they proceed to attribute these allegations collectively to "Individual Defendants," failing to identify which of the three Individual Defendants they are alleging engaged in the supposed conduct.

The theoretical damages stemming from Plaintiffs' race discrimination allegations are based upon a conclusory assumption that "white areas" have "higher levels of income and wealth, and/or higher household credit scores than the predominantly non-white areas to which Defendants disproportionately assign non-white Lead Developers." *Id.* at ¶ 140. As the allegations go, this results in "whites" receiving "higher earning *potential* and higher actual earnings." *Id.* at 141 (emphasis added). In addition, because "success as a Lead Developer is required to advance to more lucrative employment contracts up the Homefix corporate ladder," the result is that "Defendants [sic] policies [] deny non-white Lead Developers the ability to advance." *Id.* Plaintiffs also assert allegations of failure-to-promote, claiming Defendants specifically "withhold promotions and other benefits from non-white Lead Developers." *Id.* at 142.

## IV. ARGUMENT

Count VIII of the Complaint purports to assert a claim of race discrimination under 42 U.S.C. § 1981 on the basis of Plaintiffs being "non-white."[8] However, even assuming the Complaint's *factual* allegations to be true, Plaintiffs have not stated a plausible claim of discrimination under this statute. "Where the facts alleged, even if true, cannot form the basis for a claim of discrimination, dismissal is appropriate." *Myers v. Md. Auto. Ins. Fund,* 2010 WL 3120070 *3 (D. Md. 2010) (Blake, J.) (stated in the context of an ADA and ADEA discrimination claim). Since Plaintiffs have not plead facts from which the Court can reasonably infer that they suffered an adverse employment action based upon their race, or that they were denied workplace opportunities or promotions based upon race, Count VIII of Plaintiffs' Complaint must be dismissed.

---

[8] The analytical framework applied to a Section 1981 claim is the same as that applied to a Title VII claim, 42 U.S.C. § 2000e-2(a)(1). *See Alexander v. Marriott Intern'l, Inc.*, 2011 WL 1231029 (D. Md. 2011), *citing Thomas v. Denny's, Inc.,* 111 F.3d 1506, 1509 (10th Cir. 1997).

A.   *Plaintiffs' Complaint does not state a plausible discrimination claim.*

In Count VIII, Plaintiffs allege—in conclusory fashion—that Defendants "subjected Plaintiffs and members of the non-white Class to intentional racial discrimination, by directing them to perform their marketing duties targeting homeowners in predominantly non-white neighborhoods, while directing their white counterparts to target homeowners in predominantly white neighborhoods." ECF 1, ¶ 210. However, "[t]o survive a Rule 12(b)(6) motion, the legal framework of the complaint must be supported by factual allegations" giving rise to an inference of discrimination; conclusory allegations of discrimination are insufficient. *Bailey v. Ares Group, Inc.*, 803 F.Supp.2d 349 (D.Md. 2011) (J. Bennett); *Ferdinand-Davenport v. Children's Guild*, 742 F.Supp.2d 772, 782 (D.Md. 2010) (Blake, J.). To satisfy this requirement, a plaintiff must plead facts which show that "similarly situated employees outside of [their] protected class received more favorable treatment" or some other circumstances which suggest that unlawful discriminatory intent was at play. *DeLoatch v. Harford County Bd. of Educ.,* 2010 WL 1956804 *2 (D. Md. 2010), *aff'd* 408 Fed.Appx. 686 (4th Cir. 2011); *Jones v. Calvert Group, Ltd.,* 2010 WL 5055790 (D.Md. 2010), *aff'd* 440 Fed.Appx. 220 (2011). In this case, Plaintiffs have not made any such showing.

    1.   <u>Plaintiffs do not claim membership in a protected class</u>.

While Plaintiffs claim race discrimination, Plaintiffs Torray Baylor, Antonio Dorsey, and Kevon McDonald all refuse to identify their race.[9] Rather, each of these three Plaintiffs simply allege that they are "not white." ECF 1, ¶¶ 14–17, 209 ("Plaintiffs and members of the non-white Class are Black, Latinx, *or otherwise not white*") (emphasis added). In simply pleading that they are "not white," Plaintiffs fail to allege that they are members of a protected class. Moreover, this

---

[9] In contrast, Plaintiff Kym Thornton states that he is black. ECF 1, ¶ 142.

begs the question: what constitutes "non-white"? It is axiomatic that each ethnic group is not the same as another simply because it is non-white.[10]

Defense counsel are unaware of any controlling jurisprudence in this jurisdiction which permits a plaintiff to pursue a class action race discrimination claim premised upon a supposed protected class of "not white." The concept of unlawful discrimination is to prohibit discriminatory treatment on the basis of an immutable characteristic that another person possesses (*e.g.*, "I do not like him because he is 'X'"). An allegation of non-white discrimination, however, is not premised upon another person's immutable characteristic; instead, it is based upon the *absence* of an immutable characteristic. Pleadings of this nature do not align with the protections of the statute. *See* 42 U.S.C. § 1981, *et seq.*; *see also* Title VII, 42 U.S.C. § 2000e-2(a)(1), *et seq.*

Plaintiffs' allegations are only one-step removed from pleading a claim of race discrimination simply on the basis of "race," without identifying any race whatsoever (*e.g.*, "My employer discriminated against me based upon race"). As such, Plaintiffs' Complaint invites the Court to lower the bar as to how a party is permitted to plead a claim of race discrimination. The Court should reject Plaintiffs' invitation to do so.

Plaintiffs' allegations of non-white discrimination also fail to recognize that there may be Lead Developers who are multiracial. By way of illustration, Plaintiffs leave for speculation how they would classify a multiracial person who is part-white; *i.e.* would Plaintiffs consider that person "white" or "non-white"?

---

[10] Plaintiffs' claim, which seeks class action status, creates other practical problems. For example, how would the parties determine qualification for the putative class? Would any putative class-member who self-identifies as non-white be permitted to simply claim non-white status, or would they have to produce genetic data demonstrating their non-white heritage? Ultimately, Plaintiffs have presented an entirely unworkable claim by way of their refusal to identify their own race and to seek such an overbroad characterization.

When pleading race discrimination, Plaintiffs must, at minimum, espouse the race they believe is being discriminated against. Plaintiffs cannot be permitted to create a broad-brush characterization consisting of every possible race outside of "pure white," which would theoretically include Latino, African American, Pacific Islander, Indian, multiracial, and others as well. Simply put, without an allegation of membership in a recognized protected class, Plaintiffs' claim of race discrimination should be dismissed.

  2. <u>Plaintiffs have failed to plead *facts* establishing the plausibility of their allegation of race discrimination.</u>

Throughout the entirety of the 217-paragraph Complaint,[11] Plaintiffs present one conclusory example of a supposedly similarly situated "white" employee (*i.e.*, someone outside of the purported "non-white" class) allegedly receiving more favorable treatment:

> Defendants also withhold promotions and other benefits from non-white Lead Developers. For example, Plaintiff Thornton, who is Black, was promised a promotion to training manager in the Virginia Beach office by Defendants. Defendant Homefix delayed the promotion without explanation and directed Mr. Thornton to write a training manual. Mr. Thornton never received the promotion, but Defendant Homefix adopted his training manual in the Virginia Beach office. Defendants placed Nate Seiver, who is white, in the training manager position.

*Id.* at ¶ 142. However, "discrimination cannot be presumed simply because one candidate is selected over another candidate." *McCleary-Evans v. Maryland Dep't of Transp.*, 780 F.3d 582, 584 (4th Cir. 2015), *cert. denied*, -- U.S. --, 136 S.Ct. 1162 (2016). Plaintiffs present no facts that Seiver was promoted to "training manager" over Thornton on the basis that Seiver was "white" or that Thornton was "non-white." Moreover, they fail to allege: (1) who "promised a promotion" to Thornton; (2) how long Homefix "delayed the promotion"; (3) the causal connection between the

---

[11] While page 46 of the Complaint reflects a final paragraph number of 213, this is due to an error by Plaintiffs in the drafting of their Complaint. On page 44 of Plaintiffs' Complaint, numbered paragraph 206 is followed by paragraph number 201, and then the Complaints proceeds to continue through 213. After taking into account the four missing paragraphs (202–205), there are a total of 217 paragraphs.

alleged promotion and the instruction to "write a training manual"; or (4) how Homefix engaged in any unlawful action byway of supposedly "adopt[ing] his training manual" despite not awarding Thornton the promotion.

Plaintiffs allege that Homefix "regularly" assigns "Lead Developers to staff vendor booths at home trade shows." *Id.* at ¶ 57. "Plaintiffs and all those similarly situated worked trade shows or similar events several times per year" (*Id.* at ¶ 98), including "the Dulles Home Show" and various other shows in Montgomery County, Fairfax, Gaithersburg, Richmond "and elsewhere." *Id.* at 57. "At large trade shows, Defendants . . . assign white Lead Developers to staff one kiosk, and non-white Lead Developers to staff another." *Id.* at ¶ 137. As their allegations go, "Defendants assign white Lead Developers to kiosks in more visible and more highly trafficked areas, while relegating non-white Lead Developers to smaller, less preferential kiosks." *Id.* Despite these various allegations, Plaintiffs cannot specifically identify a single "large trade show" where this alleged conduct occurred, nor can they identify any dates, times, locations, individuals involved, or other information pertinent to these accusations.

Plaintiffs allege that "[o]n several occasions, Individual Defendants, on behalf of Homefix, directed lower level managers, including Plaintiff Torray Baylor when he managed Legion 11, to send 'all the white guys out to Sterling' (referring to a predominantly white area of Sterling, Virginia), or issued similar race-based assignments." *Id.* at ¶ 138. While Plaintiffs have purported to offer a verbatim quote from one the Defendants, they cannot identify who made this statement.[12] While Plaintiff Baylor refers to Sterling as a "predominantly white area," Mr. Baylor does not allege that the demographic composition of Sterling is any different than other areas to which he was assigned.

---

[12] See footnote 7, above.

Glaringly, the Complaint cannot identify a single supposedly "non-white area" that Defendants ever assigned Mr. Baylor or any other "non-white" Lead Developer to work.[13] *See id.* at ¶¶ 136–42. Although Plaintiffs seek to *imply* that non-white Lead Developers were either expressly assigned to non-white communities or otherwise prohibited from working in "white areas," the Complaint does not assert the facts necessary to buttress the plausibility of that allegation. Rather, it would require rank speculation to accept both that Plaintiffs were all assigned to work in non-white areas, and that this decision was motivated by unlawful discriminatory intent on the part of Homefix. Since Plaintiffs are not entitled to the assumption of pure speculation, their race discrimination claims must be dismissed. *See Coleman,* 626 F.3d at 190–91 (holding that "the complaint failed to state a Title VII race discrimination claim" because, "although Coleman's complaint conclusorily alleges that Coleman was terminated based on his race, it does not assert facts establishing the plausibility of that allegation").

Continuing, Mr. Baylor alleges that when he "once proposed sending a group of Lead Developers, including several who were Black, to canvass in a predominantly white neighborhood in Ashburn, Virginia, Defendant Sinnott *reprimanded* him, asking 'why would you send a bunch of Black guys [there]?'" *Id.* at ¶138 (emphasis added). Mr. Baylor does not allege that any actual "reprimand" was issued to him. Moreover, Mr. Baylor does not even allege that the "group" was not allowed to go to Ashburn; rather, he simply alleges that the aforementioned comment was made in response, but that no actual action followed.

Count VIII of the Complaint alleges that "the predominantly non-white neighborhoods where Defendants assigned Plaintiffs and members of the non-white Class have lower average

---

[13] To the contrary, Plaintiffs concede that Mr. Thornton was assigned to staff a predominantly "white" trade show, stating that he "staff[ed] a vendor booth" at "the Greek Festival in Newport News." ECF 1, ¶ 96. Presumably, Plaintiffs would consider "Greeks" to be white.

household incomes, wealth, and/or credit scores than the predominantly white neighborhoods where Defendants assigned white Lead Developers[.]" ECF 1, ¶¶ 212, 140. As noted, Plaintiffs cannot identify *any* of the "predominantly non-white neighborhoods" to which they were assigned. Accordingly, there is no reason to accept that these phantom "non-white neighborhoods" have lower "household incomes, wealth, and/or credit scores" than other neighborhoods. *See also Willis v. Countrywide Home Loans Servicing, L.P.*, 2009 WL 5206475 *24–25 (D.Md. 2009) (holding that allegations that "'other non-minority races were given more favorable treatment by the Defendant' . . . [were] too conclusory and speculative to support [Plaintiff's] claims of racial discrimination").

In terms of alleging to have incurred an injury or any type of damages as a result of Homefix's purported discriminatory actions, Plaintiffs' entire complaint is based upon *pure speculation* that Lead Developers assigned to white areas *might* earn more. Yet, Plaintiffs plead no facts in support of this speculative conclusion. Plaintiffs would like to infer (without actually stating) that Lead Developers obtain more leads in white communities; however, it is equally plausible that Lead Developers acquire more leads in non-white communities. To be sure, Plaintiffs do not allege that they incurred any actual damages as a result of Homefix's supposed actions. Rather, they speculate that the actions of Homefix had either a "likelihood" or "potential" of causing damages:

> Because income, wealth, and credit scores all impact the ***likelihood*** that a Lead Developer will successfully make a lead or pitch or that a pitch or lead will ultimately result in a sale, as well as the value of that sale, Defendants' race-based assignment practices give white Lead Developers higher earning ***potential*** and higher actual earnings than non-white Lead Developers.

ECF 1, ¶¶ 141 (emphasis added), 212. The entire Complaint is devoid of any specific allegation that non-white Lead Developers actually earned less than white Lead Developers. *See id.* at ¶¶

11

136–42, 208–13. Rather, Plaintiffs merely speculate as to the possibility of earning less. *Id.* at ¶ 141. Indeed, in addition to not alleging any decrease in earnings, Plaintiffs also do not allege that any of Homefix's actions resulted in a discharge, demotion, loss of job title, loss of supervisory responsibility, or that Homefix's actions otherwise resulted in tangible reduced opportunities of any other kind.

Of note, the above block-quote also makes the conclusory allegation that Homefix's actions depressed the "actual earnings" of Plaintiffs. *Id.* However, this generic, conclusory allegation is precisely the sort of "naked assertion" which is "devoid of 'further factual enhancement'" that the Supreme Court denounced in *Twombly* and *Iqbal*. *See Twombly,* 550 U.S. at 557; *Iqbal,* 129 S.Ct. at 1949. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal,* 129 S.Ct. at 1950. Here, the Complaint's factual allegations do not provide any specifics as to how Homefix's actions actually had "the effect of depressing the potential and actual wages" (ECF 1, ¶ 212), and the Complaint is devoid of any "factual content" which "shows" that Homefix actually discriminated against any Plaintiff with respect to any terms, conditions, or privileges of employment. Accordingly, Count VIII must be dismissed.

**B.** *Plaintiffs' complaint is devoid of facts to support claims of disparate treatment or failure-to-promote.*

Under 42 U.S.C. § 1981, a plaintiff may pursue a claim under a theory of disparate treatment or failure to promote. *See, e.g., Williams v. Giant Food Inc.,* 370 F.3d 423, 430 n. 5 (4th Cir. 2004); *Connor v. Giant Food, Inc.,* 187 F.Supp.2d 494, 496 (D.Md. 2002).

1. <u>Disparate treatment</u>.

To establish a *prima facie* disparate treatment claim under Section 1981, the plaintiff must show: (1) membership in a protected class; (2) adverse employment action; (3) satisfactory job

performance; and (4) that similarly-situated employees outside the protected class received more favorable treatment. *See White*, 375 F.3d at 295.

An adverse employment action is a discriminatory act that adversely affects the "terms, conditions, or benefits" of employment. *James v. Booz-Allen & Hamilton, Inc.,* 368 F.3d 371, 375 (4th Cir. 2004). Typically, an adverse action includes "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion." *Boone v. Goldin,* 178 F.3d 253, 255 (4th Cir. 1999).

As noted, Plaintiffs Torray Baylor, Antonio Dorsey, and Kevon McDonald all refuse to identify their race.[14] Hence, they do not claim membership in any protected class, other than alleging they are "not white."[15]

The second element requires a showing of adverse employment action. As discussed and demonstrated above, Plaintiffs have lodged conclusory allegations that they were relegated to working in non-white areas. They claim that this had a "likelihood" of affecting them adversely due to a *potential* for generating fewer leads, and thus a theoretical *possibility* of earning fewer wages, due to the fact that they were restricted to the non-white areas. However, as shown above, there are no factual allegations to buttress Plaintiffs' claim that working in non-white areas resulted in earning lower wages.

As to the third element, Plaintiffs do not allege that they provided satisfactory job performance. Indeed, Plaintiffs' Complaint is devoid of any allegation relating to the quality of their work performance. For all these reasons, which clearly demonstrate that Plaintiffs have failed to plead a *prima facie* claim, Count VIII must be dismissed.

---

[14] Plaintiff Kym Thornton is the only plaintiff who has identified his race, stating that he is black. ECF 1, ¶ 142.
[15] See Section (IV)(A)(1), *supra*, where this issue was discussed in greater detail.

2. <u>Failure-to-promote</u>.

Although the Complaint alleges (in generic/conclusory fashion) that Defendants discriminated against Plaintiffs by "withhold[ing] promotions," the Complaint is completely devoid of the requisite *facts* necessary to support a failure-to-promote claim. ECF 1, ¶ 142.

To establish a *prima facie* failure to promote claim under Section 1981, the plaintiff must show that he or she: (1) is a member of a protected class; (2) applied for an open position; (3) was qualified; and (4) was rejected under circumstances "giving rise to an inference of unlawful discrimination." *Mackey v. Shalala,* 360 F.3d 463, 468 (4th Cir. 2004); *Carter v. Ball,* 33 F.3d 450, 458 (4th Cir. 1994); *Bailey v. Ares Group, Inc.*, 803 F.Supp.2d 349, 355 (D.Md. 2011) (J. Bennett), *citing Carter v. Ball,* 33 F.3d 450, 458 (4th Cir. 1994); *Cepada v. Bd. of Educ. of Balti. Cty*, 814 F.Supp.2d 500 (D. Md. 2011).

As discussed above, Plaintiffs allege that Defendants "withhold promotions and other benefits from non-white Lead Developers." ECF 1, ¶ 142. Plaintiffs state no facts whatsoever with regard to this allegation of "withholding promotions and other benefits," other than to describe one isolated incident they claim occurred with regard to Plaintiff Thornton not receiving a "promised" promotion. *See id.* Specifically, Mr. Thornton claims he was "promised a promotion to training manager in the Virginia Beach office by Defendants." *Id.* Yet, "Mr. Thornton never received the promotion" and the Defendants eventually awarded the promotion to "Nate Seiver, who is white." *Id.*

14

Messrs. Baylor, Dorsey, and McDonald have all failed to assert any allegations or facts with regard to failure-to-promote. Accordingly, any claims of failure-to-promote asserted by them must be dismissed.

Separately, Mr. Thornton, who has claimed a failure-to-promote, alleges he is a member of one protected class: black.[16] *Id.*; *see Newport News Shipbuilding & Dry Dock Co. v. EEOC,* 462 U.S. 669, 682 (1983); *Williams v. Staples, Inc.,* 372 F.3d 662, 668 (4th Cir. 2004). He does not state that he applied for an open position; rather, he merely alleges that he "was promised a promotion to training manager in the Virginia Beach Office."[17] ECF 1, ¶ 142. Mr. Thornton also does not allege he was qualified for the position.[18] *Id.* He did not receive the promotion and he does not even state, expressly, that he was not promoted because of his race; rather, he attempts to imply as much based upon someone "who is white" ultimately receiving the promotion. *Id.* These allegations are woefully inadequate, and the failure-to-promote claims must be dismissed.

**C.**  ***Plaintiffs' remaining claims of race discrimination also fall short of the controlling "plausibility" standard.***

The Complaint also alleges that Defendants discriminated against Plaintiffs based on being "not white" in other, unspecified ways. To state a *prima facie* case of race discrimination, a plaintiff must show (among other things): (1) that he or she suffered an adverse employment action; and (2) circumstances which support an inference of unlawful discrimination (such as the existence of similarly-situated employees who received more favorable treatment). *White v. BFI Waste Services, LLC,* 375 F.3d 288, 295 (4th Cir. 2004); *Deloatch,* 2010 WL 1956804 *2. The

---

[16] As noted, Messrs. Baylor, Dorsey, and McDonald refuse to identify their race, and only allege they are non-white. ECF 1, ¶¶ 14–16.

[17] Mr. Thornton fails to provide any details regarding this allegedly "promised promotion," declining to state who made the promise on behalf of Homefix, when the promise was made, whether it was made in writing or orally, or any other even rudimentary details as to this supposed "promise."

[18] The Complaint merely alleges that Homefix "directed Mr. Thornton to write a training manual," and that Homefix "adopted his training manual." ECF 1, ¶ 142. Plaintiff does not, and cannot, allege that he was qualified for the position.

Complaint's factual allegations do not show that Plaintiffs suffered *any* adverse employment action. Nor does the Complaint offer any *facts* which suggest that any of the would-be "adverse employment actions" were motivated by Plaintiffs' race.

Plaintiffs allege that:

Executive-level managers, including but not limited to Mike Trost, also refer to white Lead Developers with terms like "premium white stud" and "clean-cut white boy," ***implying*** that the race of these individuals made it more likely that they would be successful in generating solid leads that could be turned into sales for Defendants.

ECF 1, ¶ 139 (emphasis added). At the outset, Plaintiffs do not allege that Defendants ever made any pejorative, race-based comments to them or any other non-white Lead Developers. Rather, they claim the above quoted comments have the effect of somehow "*implying*" race discrimination against non-whites. *Id.* (emphasis added). Yet, Plaintiffs provide no "factual support" or explanation for how referring to a white person as a "premium white stud" or "clean-cut white boy" has the effect of "*implying* that the race of these individuals made it more likely that they would be successful," and that non-white Lead Developers would, therefore, be unsuccessful. *Id.* (emphasis added). Accordingly, these allegations, similar to Plaintiffs' other allegations of discrimination, are entirely insufficient. For these reasons, Plaintiffs' claims of race discrimination must dismissed.

(Remainder of page intentionally left blank.)

## V. CONCLUSION

Based upon the foregoing, Homefix respectfully submits that Count VIII of Plaintiffs' Complaint must be dismissed in its entirety, with prejudice, pursuant to Fed. R. Civ. P. 12(b)(6).

Dated: June 19, 2019

Respectfully submitted,

_____/s/_____
Judd G. Millman (Fed Bar No. 18212)
  judd@luchanskylaw.com
Bruce M. Luchansky (Fed. Bar No. 08439)
  lucky@luchanskylaw.com
**LUCHANSKY MILLMAN**
606 Bosley Avenue, Suite 3B
Towson, Maryland 21204
Telephone: (410) 522-1020
*Attorneys for Defendant HomeFix Custom Remodeling Corporation*