**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| TORRAY BAYLOR, *et al.*, | * |
| *Plaintiffs*, | * |
| | Civil Action No. 1:19-cv-1195-RDB |
| v. | * |
| HOMEFIX CUSTOM REMODELING CORPORATION, *et al.* | * |
| | * |
| *Defendants*. | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

**MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF DEFENDANT HOMEFIX CUSTOM REMODELING
CORPORATION'S PARTIAL MOTION TO DISMISS PLAINTIFFS'
FIRST AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT**

Defendant Homefix Custom Remodeling Corporation ("Homefix"), through its undersigned counsel, and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, submits the following Memorandum of Points and Authorities in support of its Partial Motion to Dismiss Plaintiffs' First Amended Class and Collective Action Complaint.

## I.    INTRODUCTION

Plaintiffs' First Amended Class and Collective Action Complaint ("Amended Complaint") spans 49-pages and asserts eight separate counts.  The Amended Complaint focuses almost entirely on one-topic: unpaid wages.  Indeed, Counts I–VII of the Amended Complaint all assert various unpaid wage claims.  However, Plaintiffs have also included one count (Count VIII) asserting a speculative allegation against Homefix of race discrimination.

In their Original Complaint, Plaintiffs alleged that Homefix discriminated against all individuals who are "non-white," which Plaintiffs described as those who are "Black, Latinx, or

otherwise not white."[1]  However, in their Amended Complaint, they have dispensed with that frivolous allegation in favor of their argument *du jour*, which is that Homefix only discriminates against black individuals.[2]  Pursuant to Count VIII, Plaintiffs now seek the Court's certification of a "Black Class," consisting of "each Black individual who worked to develop leads for Homefix[.]"[3]  Nevertheless, while Plaintiffs now seek to change their alleged classification, the deficiencies remain the same due to their continued use of broad-brush allegations devoid of the requisite factual support.

The race discrimination claims alleged by Plaintiffs are frivolous on their face and plainly intended to harass Homefix.  Recent information has helped Homefix clarify the likely motivation for Plaintiffs to persist in bringing an action purported to be this expansive, despite the paucity of factual support—which is Plaintiffs' jaw-dropping, untethered claim for attorneys' fees that purportedly already total $373,956 just within the first quarter of this litigation.[4]

Simply stated, Plaintiffs have failed to allege a colorable claim of race discrimination against Homefix.  Since neither Plaintiffs nor any hypothetical similarly situated plaintiff can state a plausible claim that Homefix engaged in race discrimination, Plaintiffs' claims in Counts VIII of the Amended Complaint must be dismissed with prejudice.

## II.   STANDARD OF REVIEW

Homefix requests that the Court dismiss Plaintiffs' Count VIII, alleging employment discrimination, for failure to state a claim pursuant to the Federal Rules of Civil Procedure. Under Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P 8(a)(2).  Rule 12(b)(6) authorizes the dismissal

---

[1] *See* ECF 1 (Original Compl.), ECF 1, ¶ 209, *see also* ¶¶ 14–17, 136–142.
[2] Count VIII is asserted only against Defendant Homefix and is not asserted against the individual defendants.
[3] ECF 19, ¶ 166.
[4] See Section IV(D), below.

of a complaint if it fails to state a claim upon which relief can be granted. The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Supreme Court's opinions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "require that complaints in civil actions be alleged with greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). In the employment discrimination context, this pleading standard should not be "onerous." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 764 (4th Cir. 2003). The Supreme Court has indicated that an employment discrimination plaintiff need not plead particular facts *conclusively* satisfying each element of a prima facie case. *Swierkiewicz v. Sorema*, 534 U.S. 506 (2002).[5] *Swierkiewicz*, however, did not abrogate the requirement that the plaintiff allege "facts *sufficient* to state *all* the elements of her claim." *Bass*, 324 F.3d at 765 (emphasis added); *see Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (explaining that *Swierkiewicz* does not nullify the heightened pleading requirements of *Twombly* and *Iqbal*); *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002) ("[T]he Supreme Court's holding in *Swierkiewicz v. Sorema* did not alter the basic pleading requirement that a plaintiff set forth facts sufficient to allege each element of his claim" (internal citation omitted)).

Even with the degree of flexibility arguably given to employment discrimination plaintiffs, the court must consider whether a plaintiff's complaint has met the plausibility requirement *Twombly* and *Iqbal*. *See Miller v. Carolinas Healthcare System*, 561 Fed.Appx. 239, 241 (4th Cir.

---

[5] Although the general 12(b)(6) standard used in *Swierkiewicz* was overruled by *Twombly*, *see Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009), the analysis cited here remains good law. *Reed v. Airtran Airways*, 531 F.Supp.2d 660, 666 (D.Md. 2008).

2014) (explaining that, in the Fourth Circuit, "*Swierkiewicz* left untouched the burden of a plaintiff to allege facts sufficient to state all elements of her claim" (internal quotation marks and citation omitted)).  In making this assessment, a court must "draw on its judicial experience and common sense" to determine whether the pleader has stated a plausible claim for relief.  *Iqbal*, 556 U.S. at 679.  "At bottom, a plaintiff must nudge [its] claims across the line from conceivable to plausible to resist dismissal."  *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) (internal quotation marks omitted).

## III.    STATEMENT OF FACTS[6]

Homefix is "in the residential remodeling business . . . sell[ing] and perform[ing] remodeling services relating to windows, roofing, siding, doors, gutters, and insulation."  ECF 19, ¶ 26.  Plaintiffs performed services for Homefix as Lead Developers, charged with "developing 'leads' for Homefix sales representatives."  *Id.* at ¶¶ 2, 27–38.

Plaintiffs further allege that Lead Developers are recruited by Homefix online, through flyers, and "at colleges, homeless shelters, outside of probation offices, and even at a Burger King restaurant."  *Id.* at ¶ 28.  In their scant allegations of race discrimination,[7] Plaintiffs allege that they are all black.  ECF 19, ¶¶ 14–17, 218.  Plaintiffs allege that "Defendants segregate white Lead Developers from Black Lead Developers, directing each group, respectively, to a similarly segregated white or non-white neighborhood."  *Id.* at ¶ 8.

As for the acts of race discrimination that Plaintiffs claim Homefix has committed upon allegedly creating these segregated groups, Plaintiffs offer a moving target.  By way of illustration, Plaintiffs describe the same occurrences of race discrimination as occurring: (1) without restriction

---

[6] For the purposes of this Motion only, the allegations of the Complaint are taken as true, and all reasonable inferences are construed in Plaintiffs' favor.  *See, e.g.*, *Tobey v. Jone*s, 706 F.3d 379, 383 (4th Cir. 2013).

[7] As noted, the vast majority of Plaintiffs' allegations are plead for the purpose of supporting their seven counts claiming unpaid wages.  *See e.g.*, *id.* at ¶¶ 2–7, 22–25, 29–136, 146–165, 172(a–g), 176–216.

(¶ 8); (2) "frequently" (¶ 137); or (3) merely "on several occasions" (¶ 138).  As another example, while Plaintiffs previously alleged in their Original Complaint that Homefix engaged in race based discrimination against everyone who was "Black, Latinx, or otherwise not white," they now have entirely abandoned the claim that those who are "Latinx or otherwise not white" were discriminated against by Homefix.  *See* ECF 1, ¶ 209.  As set forth in greater detail below, Plaintiffs' shifting claims occur because they are not anchored by any factual assertions to support a consistent narrative.

Moreover, Plaintiffs fail entirely to allege any actual damages that Plaintiffs purportedly suffered from the factually unsupported, inconsistent claims they have alleged.  Instead, Plaintiffs merely speculate about the damages that Homefix's supposed policy of discrimination "potentially" or theoretically *may* have caused.  *See* ECF 19, ¶ 145.  The hypothetical damages stemming from Plaintiffs' race discrimination allegations are based upon Plaintiffs' conclusory statement that "white areas" have "higher levels of income and wealth, and/or higher household credit scores than the predominantly non-white areas to which Defendants disproportionately assign Black Lead Developers."  *Id.* at ¶ 141.  As the allegations go, this results in "whites" receiving "higher earning *potential* and higher actual earnings."  *Id.* at 145 (emphasis added).  Yet, this assertion is merely a narrative of social conditions, not an identification of any damages alleged to have actually been suffered.

Plaintiffs also assert allegations of failure to promote, claiming "success as a Lead Developer is required to advance to more lucrative employment contracts up the Homefix corporate ladder."  *Id.*  As a result, they allege that "Defendants [sic] policies [] deny Black Lead Developers the ability to advance."  *Id.*, ¶ 221 ("Homefix's race-based approach to making assignment decisions had and has the effect of . . . reducing . . . their ability to advance within the

5

company, on the basis of these individuals' race").  As described below, Plaintiffs once again fail to allege facts that identify a single instance of this actually occurring.

Nevertheless, based on these facts, Plaintiffs' pleadings set forth a proposed "Black Class," consisting not just of Black Lead Developers who have been a victim of alleged discriminatory treatment, but any Lead Developer who worked for Homefix and who also happens to be black, irrespective of whether they believe that such an individual ever experienced any form of discrimination.  *Id.* at ¶ 166.  Plaintiffs describe the putative class as "[e]ach Black individual who worked to develop leads for [Homefix] since April 2015, but not including any individuals engaged in soliciting or making sales."  *Id.*

## IV.    ARGUMENT

Count VIII of the Amended Complaint purports to assert a claim of race discrimination under 42 U.S.C. § 1981 on the basis of Plaintiffs being black.[8]  However, even assuming the Amended Complaint's factual allegations to be true, Plaintiffs have not stated a plausible claim of discrimination under this statute.  "Where the facts alleged, even if true, cannot form the basis for a claim of discrimination, dismissal is appropriate."  *Myers v. Md. Auto. Ins. Fund,* 2010 WL 3120070 *3 (D. Md. 2010) (Blake, J.) (stated in the context of an ADA and ADEA discrimination claim).  Since Plaintiffs have not plead facts from which the Court reasonably can infer that they suffered an adverse employment action based upon their race, or that they were denied workplace opportunities or promotions based upon race, Count VIII of Plaintiffs' Amended Complaint must be dismissed.

---

[8] The analytical framework applied to a Section 1981 claim is the same as that applied to a Title VII claim, 42 U.S.C. § 2000e-2(a)(1).  *See Alexander v. Marriott Intern'l, Inc.*, 2011 WL 1231029 (D. Md. 2011), *citing Thomas v. Denny's, Inc.,* 111 F.3d 1506, 1509 (10th Cir. 1997).

**A.** *Plaintiffs' Amended Complaint does not state a plausible discrimination claim.*

In Count VIII, Plaintiffs allege—in conclusory fashion—that Defendants "subjected Plaintiffs and members of the Black Class to intentional racial discrimination, by directing them to perform their marketing duties targeting homeowners in predominantly non-white neighborhoods, while directing their white counterparts to target homeowners in predominantly white neighborhoods." ECF 19, ¶ 219. However, "[t]o survive a Rule 12(b)(6) motion, the legal framework of the complaint must be supported by factual allegations" giving rise to an inference of discrimination; conclusory allegations of discrimination are insufficient. *Bailey v. Ares Group, Inc.*, 803 F.Supp.2d 349 (D.Md. 2011) (J. Bennett); *Ferdinand-Davenport v. Children's Guild*, 742 F.Supp.2d 772, 782 (D.Md. 2010) (Blake, J.). To satisfy this requirement, a plaintiff must plead facts which show that "similarly situated employees outside of [their] protected class received more favorable treatment" or some other circumstances which suggest that unlawful discriminatory intent was at play.[9] *DeLoatch v. Harford County Bd. of Educ.,* 2010 WL 1956804 *2 (D. Md. 2010), *aff'd* 408 Fed.Appx. 686 (4th Cir. 2011); *Jones v. Calvert Group, Ltd.,* 2010 WL 5055790 (D.Md. 2010), *aff'd* 440 Fed.Appx. 220 (2011). In this case, Plaintiffs have not made any such showing.

> 1. <u>Plaintiffs Kevon McDonald and Kym Thornton do not assert any factual allegations of race discrimination at all.</u>

Plaintiffs Kevon McDonald and Kym Thornton do not assert any factual allegations whatsoever in support of their respective race discrimination claims. Rather, all facts are asserted either generically on behalf of all Plaintiffs and the entire putative "Black Class," or individually on behalf of only Plaintiff Torray Baylor or Antonio Dorsey.

---

[9] Alternatively, a plaintiff may establish discrimination through "direct evidence" of discriminatory intent. *E.g.*, *Taylor v. Patuxent Inst.*, 2009 WL 4349092 *3 (D.Md. 2007) (Blake, J.). However, Plaintiffs in the instant case have not alleged any facts that are suggestive of direct evidence.

7

Plaintiffs allege that Ashburn, Virginia is "a predominantly white (59.1 percent) community that Defendants regularly assigned white Lead Developers" and that "Defendants rarely assigned Black Lead Developers like *Plaintiffs Baylor and Dorsey* to canvass in Ashburn." ECF 19, ¶ 142 (emphasis added).  No allegations of this nature are asserted on behalf of either Plaintiff McDonald or Thornton.  *See id.*

Continuing, Plaintiffs allege that "in New Carrollton, MD, a predominantly Black (64.6 percent) community [] Defendants disproportionately assigned Black Lead Developers *including Plaintiffs Baylor and Dorsey*." *Id.* at ¶ 143 (emphasis added).  Plaintiffs proceed to make the same allegation regarding "Oxon Hill, MD, another predominantly Black (73.2 percent) community to which Black Lead Developers *including Plaintiffs Baylor and Dorsey* were frequently assigned." *Id.* (emphasis added).  Again, no allegations on behalf of Plaintiff McDonald or Thornton.

It is anticipated that Plaintiffs may respond by arguing that their Amended Complaint states "***including*** Plaintiffs Baylor and Dorsey," which Plaintiffs may argue is intended to demonstrate that their allegation is not limited to exclusively Baylor and Dorsey.  *See id.* at ¶¶ 142–43 (emphasis added).  However, Plaintiffs McDonald and Thornton cannot be permitted to allow their claims to proceed based solely on Plaintiffs' usage of the word "including."   Rather, McDonald and Thornton must also assert factual allegations of race discrimination.  *See Bailey*, 803 F.Supp.2d at 351.

In its prior Motion to Dismiss, Homefix argued that *all* of the Plaintiffs failed to allege facts sufficient to establish the plausibility of their race discrimination claims.  ECF 14.1, pp. 8–13.  Plaintiffs responded by filing an Amended Complaint and adding the above quoted facts.  *See* ECF 19.  However, the facts added are expressly alleged on behalf of Baylor and Dorsey only, without any mention of McDonald or Thornton.  Since there are no factual allegations of race

discrimination asserted by either McDonald or Thornton, Count VIII must be dismissed with regard to these two Plaintiffs on this basis alone.

> 2.  <u>Despite being afforded the opportunity to amend their lawsuit, Plaintiffs have still failed to plead *facts* establishing the plausibility of their allegation of race discrimination.</u>

Throughout the entirety of the 217-paragraph Amended Complaint, Plaintiffs do not (and cannot) identify a single non-black employee (*i.e.*, someone outside of Plaintiffs' protected-class) who allegedly received more favorable treatment.[10]  Nor does the Amended Complaint allege any *facts* that can support an inference of unlawful discriminatory intent.  Rather, Plaintiffs rest their claims entirely upon speculation and generic allegations of how they allege Defendants treated "black" individuals in comparison to "white" individuals.  ECF 19, ¶¶ 137–41.  Allegations of this nature are wholly insufficient to support their claim of race discrimination.

> a.  *Plaintiffs cannot allege any of the facts necessary to support their allegation of raced based assignments at "large trade shows."*

Plaintiffs allege that Homefix "regularly" assigns "Lead Developers to staff vendor booths at home trade shows."  *Id.* at ¶ 57.  Continuing, Plaintiffs identify five trade shows attended by Baylor and Dorsey.[11]

"At *large trade shows*, Defendants . . . assign white Lead Developers to staff one kiosk, and non-white Lead Developers to staff another."  *Id.* at ¶ 138 (emphasis added).  As their allegations go, "Defendants assign white Lead Developers to kiosks in more visible and more

---

[10] Of note, in the Original Complaint, Plaintiffs included an allegation that Defendants engaged in race discrimination by awarding a position to "Nate Seiver, who is white," thereby identifying an individual outside of Plaintiffs' protected class.  ECF 1, ¶ 142.  However, in their Amended Complaint, Plaintiffs have stricken this allegation entirely and have stricken all references to Mr. Seiver.  *See* ECF 19-1 (Red-Lined Amd'd Compl.), p. 32.

[11] Consistent with the argument in the immediately preceding section, Plaintiffs do not identify any trade shows attended by either McDonald or Thornton.  *Id.* at ¶ 58.

highly trafficked areas, while relegating Black Lead Developers to smaller, less preferential kiosks." *Id.*

Yet, Plaintiffs cannot identify any of the so-called and self-defined "large trade shows" where this alleged conduct occurred. *See id.* More importantly, despite Plaintiffs Baylor and Dorsey specifically identifying five trade shows that they attended (¶ 58), neither they nor the other named Plaintiffs specifically allege that they were ever assigned to work a kiosk based upon their race. *See id.* at ¶ 137. Of course, Plaintiffs also do not (and cannot) identify any dates, times, or white individuals who received preferential treatment, nor do they (or can they) identify any other information pertinent to these accusations. Rather, Plaintiffs' allegations consist of nothing more than the claim that Defendants engage in this conduct with regard to phantom "white Lead Developers" and "Black Lead Developers," all of whom are unidentified. These allegations are insufficient to constitute an actionable claim of unlawful discrimination, and the claim must be dismissed.

> b.      *Plaintiffs do not allege that Black Lead Developers were discriminated against with regard to their canvassing assignments.*

Plaintiffs allege that "[o]n several occasions, Individual Defendants, on behalf of Homefix, directed lower level managers, including Plaintiff Torray Baylor when he managed Legion 11, to send 'all the white guys out to Sterling' (referring to a predominantly white area of Sterling, Virginia), or issued similar race-based assignments." *Id.* at ¶ 139. While Plaintiffs have purported to offer a verbatim quote from one of the three "Individual Defendants," they cannot identify who allegedly made this statement. Plaintiffs present this allegation with the hope that they can *imply*, without actually stating, that the instruction to "send 'all the white guys'" must be interpreted as meaning "do not send any black guys." However, Plaintiffs are not entitled to this speculative

inference.   Indeed, Plaintiffs do not allege that any Black Lead Developer was ever prevented, discouraged or in any other way inhibited from going to Sterling, Virginia.

Continuing, Mr. Baylor alleges another incident relating to Ashburn, Virginia, which presumably is completely separate (based on the different location) from the above described allegation relating to Sterling, Virginia. *Id.* In this incident, Mr. Baylor alleges that when he "once proposed sending a group of Lead Developers, including several who were Black, to canvass in a predominantly white neighborhood in Ashburn, Virginia, Defendant Sinnott *reprimanded* him, asking 'why would you send a bunch of Black guys [there]?'" *Id.* at ¶138 (emphasis added).

Yet, Mr. Baylor does not allege that any actual "reprimand" was issued to him.   Instead, Plaintiffs use this rhetoric to create an impression, rather than describing any actual personnel action.   Mr. Baylor also cannot identify the "neighborhood" at issue. *See id.* He does not allege that he lodged a complaint with Homefix regarding this issue.   Moreover, Mr. Baylor does not even allege that the "group" was not allowed to go to the "white neighborhood in Ashburn"; rather, he simply alleges that the aforementioned comment was made by Mr. Sinnot, but that no action followed.   Vague allegations of this nature are entirely inadequate to support Plaintiffs' race discrimination claim.

       3.     Section 1981 does not allow for a claim of disparate impact.

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*., as amended, prohibits both intentional discrimination (known as "disparate treatment") as well as, in some cases, practices that are not intended to discriminate but in fact have a disproportionately adverse effect on minorities (known as "disparate impact"). *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009). Section 1981, on the other hand, outlaws only intentional discrimination (*i.e.*, disparate treatment claims) and does not permit a claim of discrimination based upon disparate impact. *See* 42 U.S.C.

§ 1981, *et seq.*   Plaintiffs' complete failure to identify any facts alleging intentional discrimination—coupled with their broad speculations about the economic impact of Defendants' alleged actions—suggest that what they really are striving to assert is a disparate impact claim. However, since Plaintiffs have asserted their race discrimination claim only pursuant to Section 1981, their claims premised upon a theory of disparate impact must be dismissed.

Plaintiffs allege that "[i]n general, the predominantly white areas, to which Defendants disproportionately assign white Lead Developers, have higher levels of income and wealth, and/or higher household credit scores than the predominantly non-white areas to which Defendants disproportionately assign Black Lead Developers." ECF 19, ¶ 141.  Nevertheless, since Plaintiffs do not allege that these actions were a result of intentional race discrimination—but rather are seeking to imply a claim of disparate impact—their claim is not cognizable under Section 1981. *See also Willis v. Countrywide Home Loans Servicing, L.P.*, 2009 WL 5206475 *24–25 (D.Md. 2009) (holding that allegations that "'other non-minority races were given more favorable treatment by the Defendant' . . . [were] too conclusory and speculative to support [Plaintiff's] claims of racial discrimination").

Plaintiffs further state that, "[f]or example, in Ashburn, VA, a predominantly white (59.1 percent) community that Defendants regularly assigned white Lead Developers to canvass . . . Defendants rarely assigned Black Lead Developers like Plaintiffs Baylor and Dorsey[.]" *Id.* at ¶ 142.  Again, absent an allegation of intentional discrimination, this allegation does not describe a cognizable claim pursuant to Section 1981.  For example, Baylor and Dorsey may have "rarely" been assigned to Ashburn because they did not reside near Ashburn and, instead, were assigned to areas closer to where they were physically located.

Plaintiffs allege that "[b]y contrast, [] New Carrollton, MD [is] a predominantly Black (64.6 percent) community that Defendants disproportionately assigned Black Lead Developers including Plaintiffs Baylor and Dorsey to canvass." *Id.* at ¶ 143.  However, Plaintiffs do not allege that assignments to New Carrollton were made *only* to Black Lead Developers or that the assignments were made *because* the Lead Developers were black.  Plaintiffs also do not allege that white Lead Developers received significantly fewer assignments to New Carrollton; rather, they only allege that the assignments were made "disproportionately." *Id.* at ¶¶ 141, 43.  Plaintiffs make the identical allegation with regard to Oxon Hill, Maryland, alleging "Black Lead Developers including Plaintiffs Baylor and Dorsey were frequently assigned" to work in this area. *Id.*  Yet, Plaintiffs leave for speculation as to the question of whether white Lead Developers were also "frequently assigned" to Oxon Hill.

Although Plaintiffs seek to *imply* that Black Lead Developers were either expressly assigned to non-white communities or otherwise prohibited from working in "white areas," the Amended Complaint does not assert the facts necessary to buttress the plausibility of that allegation.  Rather, it would require rank speculation to accept both that (1) Plaintiffs were primarily assigned to work in non-white areas and (2) that this decision was motivated by unlawful discriminatory intent on the part of Homefix.  Plaintiffs are not entitled to this speculative assumption. *See Coleman,* 626 F.3d at 190–91 (holding that "the complaint failed to state a Title VII race discrimination claim" because, "although Coleman's complaint conclusory alleges that Coleman was terminated based on his race, it does not assert facts establishing the plausibility of that allegation").

13

Ultimately, the vast majority of allegations alleging race discrimination in Plaintiffs'
Amended Complaint are premised entirely upon a theory of disparate impact.  Since Section 1981
does not permit a disparate impact claim, Count VIII must be dismissed.

4.    Plaintiffs do not allege that they incurred any injury.

In terms of alleging to have incurred an injury or any type of damages as a result of
Homefix's purported discriminatory actions, Plaintiffs' entire complaint is based upon pure
speculation that Black Lead Developers supposedly assigned to non-white areas *might* earn less.
Yet, Plaintiffs plead no facts in support of this speculative conclusion.  Plaintiffs would like to
imply (without actually stating) that Lead Developers obtain fewer leads in what they consider
"non-white communities"; however, it is equally plausible that Lead Developers acquire the same
or more leads in non-white communities.[12]  What is clear and certain, however, is that Plaintiffs
do not allege that they incurred any actual damages as a result of Homefix's supposed actions and
do not allege that they earned less than white Lead Developers.  Rather, they speculate that the
actions of Homefix had either a "likelihood" or "potential" of causing damages:

> Because income, wealth, and credit scores all impact the ***likelihood*** that a Lead
> Developer will successfully make a lead or pitch or that a pitch or lead will
> ultimately result in a sale, as well as the value of that sale, Defendants' race-based
> assignment practices give white Lead Developers higher earning ***potential*** and
> higher actual earnings than Black Lead Developers.

ECF 19, ¶¶ 145 (emphasis added), 221.  The entire Amended Complaint is devoid of any specific
allegation that Black Lead Developers actually earned less than white Lead Developers.  *See id.* at
¶¶ 137–45, 217–22.  Rather, Plaintiffs merely speculate as to the possibility of earning less.  *Id.* at

---

[12] This highlights the logical fallacy with Plaintiffs' argument.  Homefix is a for-profit business providing residential remodeling services.  Naturally, Homefix wants Lead Developers to generate as many leads as possible, if for no other reason than it makes Homefix a more successful and profitable business.  It is completely non-sensical to suggest that Homefix intentionally assigns Black Lead Developers to lower income communities where they would knowingly generate *fewer* leads (and, thus, less profit for Homefix) purely out of a racist bias.

¶ 145.  Indeed, in addition to not alleging any decrease in earnings, Plaintiffs also do not allege that any of Homefix's actions resulted in a discharge, demotion, loss of job title, loss of supervisory responsibility, or that Homefix's actions otherwise resulted in tangible reduced opportunities of any other kind.

Of note, the above quote also contains Plaintiffs' conclusory allegation that Homefix's actions depressed the "actual earnings" of Plaintiffs.  *Id.*  However, this generic, conclusory allegation is precisely the sort of "naked assertion" which is "devoid of 'further factual enhancement'" that the Supreme Court denounced in *Twombly* and *Iqbal*.  *See Twombly,* 550 U.S. at 557; *Iqbal,* 129 S.Ct. at 1949.  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Iqbal,* 129 S.Ct. at 1950.  Here, the Amended Complaint's factual allegations do not provide any specifics as to how Homefix's actions actually had "the effect of depressing the potential and actual wages" (ECF 19, ¶ 221), and the Amended Complaint is devoid of any "factual content" which "shows" that Homefix actually discriminated against any Plaintiff with respect to any terms, conditions, or privileges of employment.  Accordingly, Count VIII must be dismissed.

**B.**     ***Plaintiffs' Amended Complaint is devoid of facts to support claims of disparate treatment or failure-to-promote.***

Under 42 U.S.C. § 1981, a plaintiff may pursue a claim under a theory of disparate treatment or failure to promote.  *See, e.g., Williams v. Giant Food Inc.,* 370 F.3d 423, 430 n. 5 (4th Cir. 2004); *Connor v. Giant Food, Inc.,* 187 F.Supp.2d 494, 496 (D.Md. 2002).

1.     Disparate treatment.

To establish a *prima facie* disparate treatment claim under Section 1981, the plaintiff must show: (1) membership in a protected class; (2) adverse employment action; (3) satisfactory job

performance; and (4) that similarly-situated employees outside the protected class received more favorable treatment.  *See White*, 375 F.3d at 295.

An adverse employment action is a discriminatory act that adversely affects the "terms, conditions, or benefits" of employment.  *James v. Booz-Allen & Hamilton, Inc.,* 368 F.3d 371, 375 (4th Cir. 2004).  Typically, an adverse action includes "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion." *Boone v. Goldin,* 178 F.3d 253, 255 (4th Cir. 1999).

As to the first element, all Plaintiffs state that they are black.  ECF 19, ¶¶ 14–17.

The second element requires a showing of adverse employment action.  As discussed and demonstrated above, Plaintiffs have attempted to lodge conclusory allegations that they were relegated to working in non-white areas.  They claim that this had a "likelihood" of affecting them adversely due to a *potential* for generating fewer leads, and thus a theoretical *possibility* of earning fewer wages, due to the fact that they were restricted to the non-white areas.  *Id.* at ¶145.  However, as shown above, there are no factual allegations to buttress Plaintiffs' claim that working in non-white areas resulted in earning lower wages.

As to the third element, Plaintiffs do not allege that they provided satisfactory job performance.  Indeed, Plaintiffs' Amended Complaint is devoid of any allegation relating to the quality of their work performance.

For the fourth element, Plaintiffs cannot identify any similarly-situated employees outside of their protected class who received more favorable treatment.  For all of these reasons, which clearly demonstrate that Plaintiffs have failed to plead a *prima facie* claim, Count VIII must be dismissed.

2.    Failure-to-promote.

Although the Amended Complaint alleges (in generic, conclusory fashion) that Homefix discriminated against Plaintiffs by "deny[ing] Black Lead Developers the ability to advance," the Amended Complaint is completely devoid of the requisite *facts* necessary to support a failure-to-promote claim.  ECF 19, ¶ 145.  Despite Homefix demonstrating in its first Motion to Dismiss (ECF 14) that Plaintiffs' failure-to-promote claim is wholly inadequate, Plaintiffs continue to pursue this claim in their Amended Complaint.

To establish a *prima facie* failure to promote claim under Section 1981, the plaintiff must show that he or she: (1) is a member of a protected class; (2) applied for an open position; (3) was qualified; and (4) was rejected under circumstances "giving rise to an inference of unlawful discrimination."  *Mackey v. Shalala,* 360 F.3d 463, 468 (4th Cir. 2004); *Carter v. Ball,* 33 F.3d 450, 458 (4th Cir. 1994); *Bailey v. Ares Group, Inc.*, 803 F.Supp.2d 349, 355 (D.Md. 2011) (J. Bennett), *citing Carter v. Ball,* 33 F.3d 450, 458 (4th Cir. 1994); *Cepada v. Bd. of Educ. of Balti. Cty*, 814 F.Supp.2d 500 (D. Md. 2011).

As noted, Plaintiffs allege that Defendants "deny Black Lead Developers the ability to advance."  ECF 19, ¶¶ 145, 221.  Plaintiffs state no facts whatsoever with regard to this allegation of failure to promote or "ability to advance."  *See id.*  Of the four factors listed above, the only one satisfied by Plaintiffs is being a member of a protected class.  None of the Plaintiffs allege they applied for an open position; that they were qualified for an open position; or that they were rejected under circumstances "giving rise to an inference of unlawful discrimination."  *Id.*  Plaintiffs naked assertion of being denied "the ability to advance" is woefully inadequate, and Plaintiffs' failure-to-promote claims must be dismissed.

**C.**     ***Plaintiffs' remaining claims of race discrimination also fall short of the controlling "plausibility" standard.***

The Amended Complaint also alleges that Defendants discriminated against Plaintiffs based on being "not white" in other, unspecified ways.  To state a *prima facie* case of race discrimination, a plaintiff must show (among other things): (1) that he or she suffered an adverse employment action; and (2) circumstances which support an inference of unlawful discrimination (such as the existence of similarly-situated employees who received more favorable treatment). *White v. BFI Waste Services, LLC,* 375 F.3d 288, 295 (4th Cir. 2004); *Deloatch,* 2010 WL 1956804 *2.  The Amended Complaint's factual allegations do not show that Plaintiffs suffered *any* adverse employment action.  Nor does the Amended Complaint offer any *facts* which suggest that any of the would-be "adverse employment actions" were motivated by Plaintiffs' race.

Plaintiffs allege that:

> Executive-level managers, including but not limited to Mike Trost, also refer to white Lead Developers with terms like 'premium white stud' and 'clean-cut white boy,' ***implying*** that the race of these individuals made it more likely that they would be successful in generating solid leads that could be turned into sales for Defendants.

ECF 19, ¶ 140 (emphasis added).  At the outset, Plaintiffs do not state Mike Trost's race and leave for speculation as to whether he is black, white, or another race.  Moreover, Plaintiffs do not allege that Defendants ever made any pejorative, race-based comments directly to them or any other non-white Lead Developers.  Rather, they claim the above quoted comments have the effect of somehow "implying*"* race discrimination against Black Lead Developers.  *Id.* (emphasis added). Yet, Plaintiffs provide no "factual support" or explanation for how referring to a white person as a "premium white stud" or "clean-cut white boy" has the effect of "*implying* that the race of these individuals made it more likely that they would be successful," and that Black Lead Developers would, therefore, be unsuccessful.  *Id.* (emphasis added).  Accordingly, these allegations, similar

to Plaintiffs' other allegations of discrimination, are entirely insufficient.   For these reasons, Plaintiffs' claims of race discrimination must dismissed.

**D.**      ***Plaintiffs continue asserting this non-meritorious claim of race discrimination for the purpose of generating attorneys' fees.***

As noted in the introduction, above, Plaintiffs' claims of race discrimination are intended to harass Homefix, while Plaintiffs' counsel incurs unambiguously exorbitant attorneys' fees that they hope to later shift onto Homefix.   Pursuant to the Local Rules, Appendix "B," Rule 1(c), Plaintiffs are required to submit quarterly statements reflecting the amount of time spent on the case and the total value of that time.

This lawsuit was initiated on April 24, 2019.   ECF 1.   On July 9, 2019, at the request of Defense counsel, Plaintiffs' counsel submitted their first quarterly statement.   Ex. 1 (Quarterly Stmt).   During the brief period of time that this matter has been active, Plaintiffs claim to have have incurred approximately ***$373,956.00*** in attorneys' fees and costs.   *Id.*   Homefix recognizes that the issue of attorneys' fees is not typically raised at this juncture.   However, given that this figure is so shocking, reprehensible, and entirely unjustified, it serves to clearly reveal Plaintiffs' true motivation in advancing these non-meritorious claims.

(Remainder of page intentionally left blank.)

## V.    CONCLUSION

Based upon the foregoing, Homefix respectfully submits that Count VIII of Plaintiffs' Amended Complaint must be dismissed in its entirety, with prejudice, pursuant to Fed. R. Civ. P. 12(b)(6).

Dated: August 1, 2019                              Respectfully submitted,

                                                    _____/s/_____

Judd G. Millman (Fed Bar No. 18212)
  judd@luchanskylaw.com
Bruce M. Luchansky (Fed. Bar No. 08439)
  lucky@luchanskylaw.com
**LUCHANSKY MILLMAN**
606 Bosley Avenue, Suite 3B
Towson, Maryland 21204
Telephone: (410) 522-1020
*Attorneys for Defendant Homefix Custom Remodeling Corporation*