IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TORRAY BAYLOR, *et al.*,                    *

    Plaintiffs,                    *

                               Civil Action No. RDB-19-1195

    v.                    *

HOMEFIX CUSTOM                    *
REMODELING CORP., *et al.*,
                        *

    Defendants.                    *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM OPINION

Plaintiffs Torray Baylor ("Baylor"), Antonio Dorsey ("Dorsey"), Kevon McDonald ("McDonald"), and Kym Thornton ("Thornton") ("Plaintiffs"), on behalf of themselves and others similarly situated, bring this action against their former employer Homefix Custom Remodeling Corporation ("Homefix"), its President and Owner Tope Lala, its Chief Executive Officer Adam Shampaine, and its Senior Vice President & Chief Marketing Officer Keith Sinnott (collectively, "Defendants"). (2d Am. Compl., ECF No. 37.) Plaintiffs Baylor, Dorsey, McDonald, and Thornton are all African-American males who allege failure to pay minimum and overtime wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, the Maryland Wage Payment and Collection Law, Md. Code Ann., Lab. & Empl. § 3-501, *et seq.* ("MWPCL"), the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Lab. & Empl. § 3-401, *et seq.*, the District of Columbia Wage Payment and Collection Law ("DCWPCL"), D.C. Code § 32-1301, *et seq.*, and the District of Columbia Minimum Wage Revision Act ("DCMWRA"), D.C. Code § 32-1001, *et seq.* (*Id.*) In addition, Plaintiffs assert

claims for breach of contract under Maryland and Virginia law and race discrimination in violation of 42 U.S.C. § 1981.  (*Id.*)

Currently pending before this Court is Plaintiffs' Motion for Conditional Collective Action Certification and Court-Facilitated Notice. (ECF No. 3.)  Also pending are Defendant Homefix Custom Remodeling Corporation's Partial Motion to Dismiss Plaintiffs' Original Class and Collective Action Complaint (ECF No. 14) and the Plaintiffs' First Amended Class and Collective Action Complaint (ECF No. 26).  Specifically, the Defendant Homefix moves to dismiss Count VIII alleging race discrimination.  The parties' submissions have been reviewed, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2018).

For the reasons that follow, Plaintiffs' Motion for Conditional Collective Action Certification and Court-Facilitated Notice (ECF No. 3) is GRANTED IN PART and DENIED IN PART.  Specifically, a collective action is conditionally certified for a class consisting of "**all individuals who assert minimum wage or overtime claims and who work or worked to generate leads or pitches for Homefix Custom Remodeling Corporation, a/k/a Homefix Corporation at any time from March 6, 2017 to the present.**"  Defendant Homefix Custom Remodeling Corporation's Partial Motion to Dismiss Plaintiffs' Class and Collective Action Complaint (ECF No. 14) is DENIED AS MOOT and Defendant Homefix Custom Remodeling Corporation's Partial Motion to Dismiss Plaintiffs' First Amended Class and Collective Action Complaint (ECF No. 26), applied to Plaintiffs' Second Amended Complaint (ECF No. 37), is DENIED.

## BACKGROUND

In the context of the three pending motions, this Court "accept[s] as true all well-pleaded facts in [the] complaint and construe[s] them in the light most favorable to the plaintiff." *See Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)). Plaintiffs Baylor, Dorsey, McDonald, and Thornton[1] are African-American residents of Maryland, Washington, D.C., and Alabama who were employed by Defendant Homefix as Lead Developers in the Maryland, D.C., and Virginia area between 2016 and 2018, during the period of three years before the filing of the instant Complaint. (2d Am. Compl. ¶¶ 15-18, 74, 75, 83, 88, 93, ECF No. 37.) Homefix, a Maryland corporation, is a residential remodeling company that operates in Maryland, D.C., Virginia, Pennsylvania, Delaware, North Carolina, and West Virginia. (*Id.* ¶¶ 1, 20, 27.) The company is run by President and Owner Tope Lala, its Chief Executive Officer Adam Shampaine, and its Senior Vice President & Chief Marketing Officer Keith Sinnott (collectively, "Individual Defendants"). (*Id.* ¶¶ 1, 23-25.) Defendant Homefix sells and performs remodeling services relating to windows, roofing, siding, doors, gutters, and insulation. (*Id.* ¶ 27.) Homefix employs a staff of non-exempt employees, known as "Lead Developers," who are responsible for canvassing neighborhoods, attending events such as trade shows, fairs, and festivals, and generating leads for Homefix's sales staff. (*Id.* ¶¶ 28, 44.) Upon hiring, Lead Developers sign an "Independent Contractor Agreement" along with a non-compete agreement, which refers to the Lead Developer as an "employee." (*Id.* ¶¶ 30,

---

[1] The additional plaintiffs, Brian Hall, James Hamerlein, and Arthur Preston Scandrett, who filed consent forms to join the collective action, do not identify their race or the specific position they held at Homefix. (*See* ECF Nos. 9, 17, 31.)

71; *see also* Homefix Custom Remodeling Independent Contractor Agreement, ECF No. 3-9; Noncompete Agreement ¶ 1, ECF No. 3-10.)

A Lead Developer's main objective is to secure leads for Homefix by speaking to homeowners to generate their interest in meeting with a Homefix sales representative. (2d Am. Compl. ¶ 32, ECF No. 37.) Lead Developers are paid on a commission basis, receiving compensation based on the results of the leads they generate. (*Id.* ¶¶ 3; Homefix Custom Remodeling Independent Contractor Agreement, ECF No. 3-9.) If a Lead Developer secures an appointment for a sales representative, that is known as a "coded lead," and if a sales representative indeed meets with that lead, it is known as a "coded pitch." (2d Am. Compl. ¶¶ 36, ECF No. 37.) Plaintiffs allege that Defendants promise to pay "either a set dollar amount per coded lead or per pitch, or a combination of a set dollar amount plus a percentage of sales." (*Id.* ¶ 68.) Defendants pay a lower amount for coded leads than for coded pitches. (*Id.*) Ultimately, Individual Defendants Lala, Shampaine, and Sinnott provide final approval of the precise dollar amounts for each Lead Developer's compensation. (*Id.* ¶ 67.)

Lead Developers are required to report to a Homefix office to attend trainings or pre-shift meetings every weekday before traveling to neighborhoods to canvass for leads. (*Id.* ¶¶ 46-50.) If a Lead Developer does not attend a pre-shift meeting, which may last from one to four hours, then the Lead Developer is not permitted to canvas that day. (*Id.* ¶¶ 51-52.) Lead Developers canvass for at least four hours a day, and they are required to wear a uniform featuring the Homefix logo. (*Id.* ¶¶ 55, 64.)

Defendants set the schedules for all Lead Developers, determining the hours they must work, including the reporting time, daily meeting or training time, the hours spent generating

leads, and the time spent at trade show booths or at in-store kiosks. (*Id.* ¶ 62.) In addition, Defendants set daily, weekly, and monthly lead quotas for Lead Developers, expecting Lead Developers to secure two coded leads per day, ten coded leads per week, and forty coded leads per month. (*Id.* ¶ 65.) All leads, which must be logged in the Homefix tracking system, are the exclusive property of Defendants, and Lead Developers may not use the leads for their own benefit. (*Id.* ¶ 66; Homefix Custom Remodeling Independent Contractor Agreement ¶ 4, ECF No. 3-9.)

Plaintiffs Baylor, Dorsey, McDonald, and Thornton were all employed as Lead Developers between 2016 and 2018, during the period of three years before the filing of the instant Complaint on April 24, 2019. (2d Am. Compl. ¶ 74, ECF No. 37; Baylor Decl. ¶ 1, ECF No. 3-4; Dorsey Decl. ¶ 1, ECF No. 3-5; McDonald Decl. ¶ 1, ECF No. 3-6; Thornton Decl. ¶ 1, ECF No. 3-7.) Plaintiff Baylor asserts that he regularly worked approximately six days per week for 10 to 12 hours per day, resulting in payment of approximately $500 to $600 a week. (Baylor Decl. ¶¶ 7, 9, ECF No. 3-4.) Plaintiff Dorsey asserts that he regularly worked approximately six days per week for 8 to 10 hours per day, resulting in payment of approximately $500 to $600 a week. (Dorsey Decl. ¶¶ 7, 9, ECF No. 3-5.) Plaintiff McDonald asserts that he regularly worked approximately seven days per week for 7 hours per day on weekdays and 3 hours per day on weekends, resulting in payment of approximately $100 to $450 a week. (McDonald Decl. ¶¶ 7, 9, ECF No. 3-6.) Plaintiff Thornton asserts that he regularly worked approximately six days per week for 8 to 12 hours per day, resulting in approximately $300 to $700 a week. (Thornton Decl. ¶¶ 7, 10 ECF No. 3-7.) The Plaintiffs each assert that they worked additional hours at trade shows and other events throughout the

year, usually on weekends ranging from 9 to 12 hours per day. (Baylor Decl. ¶ 8, ECF No. 3-4; Dorsey Decl. ¶ 8, ECF No. 3-5; McDonald Decl. ¶ 8, ECF No. 3-6; Thornton Decl. ¶ 8, ECF No. 3-7.)

Plaintiffs allege that Defendants did not list their hours on their paychecks, nor did Defendants pay any premium for time worked over 40 hours in a week. (Baylor Decl. ¶ 10, ECF No. 3-4; Dorsey Decl. ¶ 10, ECF No. 3-5; McDonald Decl. ¶ 10, ECF No. 3-6; Thornton Decl. ¶ 11, ECF No. 3-7.)   Each Plaintiff attests that they were not paid for certain weeks of work, with Plaintiff Thornton attesting that he was not paid for at least 40 weeks of his work as a Lead Developer. (Baylor Decl. ¶ 11, ECF No. 3-4; Dorsey Decl. ¶ 11, ECF No. 3-5; McDonald Decl. ¶ 11, ECF No. 3-6; Thornton Decl. ¶ 12, ECF No. 3-7.)   Finally, Plaintiffs allege that they were not paid on the basis of the hours they worked. (Baylor Decl. ¶ 9, ECF No. 3-4; Dorsey Decl. ¶ 9, ECF No. 3-5; McDonald Decl. ¶ 9, ECF No. 3-6; Thornton Decl. ¶ 10, ECF No. 3-7.)

On April 24, 2019, Plaintiffs filed a Complaint against Defendants, alleging failure to pay minimum and overtime wages under the FLSA, the Maryland Wage Payment and Collection Law, the Maryland Wage and Hour Law, the District of Columbia Wage Payment Collection Law, and the District of Columbia Minimum Wage Revision Act. (Compl., ECF No. 1.)   Plaintiffs also asserted claims for breach of contract under Maryland and Virginia law and race discrimination in violation of 42 U.S.C. § 1981. (*Id.*)

On May 6, 2019, Plaintiffs filed the instant Motion for Conditional Collective Action Certification and Court-Facilitated Notice, seeking to conditionally certify a class consisting of "all individuals employed by Defendants as non-supervisory Lead Developers engaged in

canvassing or working vendor booths or kiosks, at any time during the period beginning three years prior to the date of commencement of this action, through the date of judgment." (ECF No. 3 at 10.)  Plaintiffs allege that a collective action is appropriate based on Defendants' common scheme to misclassify employees as independent contractors and failing to pay those employees minimum and overtime wages. (*See* 2d Am. Compl. ¶¶ 160-169, ECF No. 37; ECF No. 3-1 at 14-15.) To support their Motion, Plaintiffs have attached their personal declarations and Plaintiff McDonald has provided his pay stubs. (ECF Nos. 3-4, 3-5, 3-6, 3-7, 3-8.) Plaintiffs also included a sample Homefix Independent Contractor Agreement and a sample Homefix non-compete agreement. (ECF Nos. 3-9, 3-10.)  Since the initial filing of the Complaint, three additional plaintiffs, Brian Hall, James Hamerlein, and Arthur Preston Scandrett—all former employees of Homefix—have filed consent forms to join the collective action. (ECF Nos. 9, 17, 31.)

On June 19, 2019, Defendant Homefix filed a Partial Motion to Dismiss Plaintiffs' Class and Collective Action Complaint (ECF No. 14). After Plaintiffs filed an Amended Complaint on July 3, 2019 (ECF No. 19), Defendant Homefix refiled a Partial Motion to Dismiss Plaintiffs' First Amended Class and Collective Action Complaint (ECF No. 26). On February 12, 2020, this Court, with Defendants' consent, granted Plaintiffs' Motion to Amend the Amended Complaint. (ECF No. 36.) Accordingly, Plaintiffs filed their Second Amended Complaint on February 13, 2020. (ECF No. 37.) This Second Amended Complaint states the identical claim of race discrimination in Count VIII, which the Defendant Homefix has moved to dismiss.[2]

---

[2] As discussed *infra*, the Court will treat Defendant Homefix's Partial Motion to Dismiss Plaintiffs'

## STANDARD OF REVIEW

Under the Fair Labor Standards Act, a plaintiff may bring an action on behalf of himself and other employees so long as the other employees are "similarly situated" to the plaintiff. 29 U.S.C. § 216(b); *see also Quinteros v. Sparkle Cleaning, Inc.,* 532 F. Supp. 2d 762, 771 (D. Md. 2008). As this Court previously noted, Section 216 of the FLSA "establishes an 'opt-in' scheme, whereby potential plaintiffs must affirmatively notify the court of their intentions to be a party to the suit." *Quinteros,* 532 F. Supp. 2d at 771 (citing *Camper v. Home Quality Mgmt., Inc.,* 200 F.R.D. 516, 519 (D. Md. 2000)). Section 216(b) provides, in relevant part, that:

> An action . . . may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and on behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).

Whether to grant conditional certification is left to the court's discretion. *Syrja v. Westat, Inc.,* 756 F. Supp. 2d 682, 686 (D. Md. 2010) (stating that "[d]eterminations of the appropriateness of conditional collective action certification . . . are left to the court's discretion[]"); *see also Hoffmann–La Roche, Inc. v. Sperling,* 493 U.S. 165, 169 (1989). This Court employs a two-step inquiry when deciding whether to certify a collective action under the FLSA. *Syrja,* 756 F. Supp. 2d at 686; *Banks v. Wet Dog Inc.,* No. CIV.A. RDB-13-2294, 2015 WL 433631, at *1 (D. Md. Feb. 2, 2015). First, upon a minimal evidentiary showing that a plaintiff can meet the substantive requirements of 29 U.S.C. § 216(b), the plaintiff may proceed

---

First Amended Class and Collective Action Complaint (ECF No. 26) as a motion to dismiss Plaintiffs' Second Amended Complaint (ECF No. 37).

with a collective action on a provisional basis. Second, following discovery, the court engages in a more stringent inquiry to determine whether the plaintiff class is "similarly situated" in accordance with the requirements of § 216. *Rawls v. Augustine Home Health Care, Inc.,* 244 F.R.D. 298, 300 (D. Md. 2007) (internal citations omitted). The court then renders a final decision regarding the propriety of proceeding as a collective action. *Id.* The second, more "stringent" phase of collective action certification under the FLSA is often prompted by a defendant's filing of a motion to decertify, and thus is referred to as the "decertification stage." *Syrja,* 756 F. Supp. 2d at 686.

## ANALYSIS

### I.   Motion for Conditional Certification

#### A. Plaintiffs are similarly situated.

The "paramount issue in determining the appropriateness of a conditional class certification is whether plaintiffs have demonstrated that potential class members are 'similarly situated.'" *Williams v. Long,* 585 F. Supp. 2d 679, 684 (D. Md. 2008). Plaintiffs bear the burden of showing that their claims are "similarly situated," but courts have ruled that "similarly situated" need not mean "identical." *See, e.g., Hipp v. Liberty Nat. Life Ins. Co.,* 252 F.3d 1208, 1217 (11th Cir. 2001). This Court has held that a group of FLSA plaintiffs is similarly situated if they can show that they were victims of a common policy, scheme, or plan that violated the law. *Butler v. DirectSAT USA, LLC,* 876 F.Supp.2d 560, 566 (D. Md. 2012) (citing *Mancia v. Mayflower Textile Servs. Co.,* CIV.A. No. CCB–08–273, 2008 WL 4735344, at *3 (D. Md. Oct. 14, 2008)).

A plaintiff's allegations thus "must consist of more than 'vague allegations' with

'meager factual support,' but [they] need not enable the court to reach a conclusive determination whether a class of similarly situated plaintiffs exists." *Mancia,* 2008 WL 4735344, at *2 (quoting *D'Anna v. M/A–COM, Inc.,* 903 F. Supp. 889, 893 (D. Md. 1995)). Plaintiffs may rely on "affidavits or other means" to make the required showing. *Williams,* 585 F. Supp. 2d at 683; *see also Bouthner v. Cleveland Const., Inc.,* CIV.A. No. RDB-11-0244, 2012 WL 738578, at *4 (D. Md. Mar. 5, 2012); *Ruiz v. Monterey of Lusby, Inc.,* CIV.A. No. DKC 13-3792, 2014 WL 1793786, at *1–2 (D. Md. May 5, 2014). If, however, "sufficient evidence in the record at the initial 'notice' stage makes it clear that notice is not appropriate, . . . a court can . . . deny certification outright." *Syrja,* 756 F. Supp. 2d at 686 (quoting *Purdham v. Fairfax Cnty. Pub. Sch.,* 629 F. Supp. 2d 544, 547 (E.D.Va. 2009)).

Plaintiffs assert that they and members of the putative class are similarly situated because they were subject to the same company-wide policy or practice of violating FLSA's minimum wage and overtime requirements by misclassifying Lead Developers as independent contractors. Defendants argue that Plaintiffs are not similarly situated because (1) Plaintiffs allege that there are no time records of hours worked, (2) Plaintiffs had varying positions, classifications, and pay structures at Homefix; and (3) Plaintiffs' race discrimination claim under 42 U.S.C. § 1981 precludes Plaintiffs from presenting a common core of claims applicable to all putative class members.

Contrary to Defendants' assertions, Plaintiffs have made the requisite factual showing that they are "similarly situated" to other employees who worked for the Defendants during the period in question. First, Plaintiffs' failure to produce time records in this case does not preclude conditional certification. Defendants' reliance on this Court's decision in *Brown v.*

*Rapid Response Delivery, Inc., et al.* is misplaced. Civil Action No. RDB-16-1203, 2017 WL 55858 (D. Md. Jan. 4, 2017). In *Brown*, this Court denied plaintiff delivery drivers' motion for conditional certification because "the actual work performed by each class member varie[d] substantially…in terms of the number of deliveries made, the destination of the deliveries, and crucially, the time taken to make the deliveries." *Id.* at *3.

Defendants argue that, as in *Brown*, Plaintiffs' failure in this case to produce time records necessitates individualized factual inquiries for each class member, thus barring conditional certification. *See id.* However, as this Court has previously distinguished in *Peterson v. Universal Medical Equipment & Res., Inc., et al.*, the proposed class of drivers in *Brown* "exercised discretion/control over their assignments they accepted and the manner and time in which they would complete their assignments." Civil Action No. RDB-16-596, 2017 WL 679200, at *3 (D. Md. Feb. 21, 2017). Here, in contrast, Plaintiffs have alleged significant control by Defendants over Plaintiffs' assignments, including Defendants setting the schedules for all Lead Developers, determining the hours they must work, including the reporting time, daily meeting or training time, the hours spent generating leads, and the time spent at trade show booths or at in-store kiosks. (2d Am. Compl. ¶ 62, ECF No. 37.) In addition, Defendants set daily, weekly, and monthly lead quotas for Lead Developers, expecting Lead Developers to secure two coded leads per day, ten coded leads per week, and forty coded leads per month. (*Id.* ¶ 65.) Such allegations are clearly distinct from those in *Brown*, where the delivery drivers "decide[d] when to begin their work days, decide[d] when to take breaks, determine[d] their own daily and weekly travel itineraries, and decide[d] when to end their respective work days." *Brown*, 2017 WL 55858 at *3 (quoting *Syrja v. Westat, Inc.*, 756 F. Supp. 2d 682, 684 (D. Md.

2010)). Moreover, any failure by the Defendants to maintain adequate time records does not bar Plaintiffs from pursuing a collective action. *See Butler v. DirectSAT USA, LLC*, 47 F. Supp. 3d 300, 309 (D. Md. Sept. 18, 2004) ("the absence of records documenting Plaintiffs' off-the-clock work is not fatal to the collective...employers, not employees, bear the ultimate responsibility for ensuring that employee time sheets are an accurate record of all hours worked by the employees").

Second, Defendants' assertion that Plaintiffs are not similarly situated because they had "varying positions, classifications, and pay structures" at Homefix is also meritless. Defendants cite Plaintiff Baylor's position as a "legion manager" and "team leader" to show that he is not similarly situated to other Lead Developers. While Plaintiff Baylor held other positions at Homefix at different times, his allegations of minimum and overtime violations rely only on his time as a Lead Developer from May 2015 until October 2015 and from May 2017 to May 2018. (Baylor Decl. ¶ 1, ECF No. 3-4; 2d Am. Compl. ¶¶ 75-82, ECF No. 37.)

Despite Defendants' attempts to articulate factual differences between the putative class Plaintiffs, all that is required of Plaintiffs at this stage is to show that they were the victims of a common scheme, policy, or plan that violated the law. *See Butler v. DirectSAT USA, LLC*, 876 F.Supp.2d 560, 566 (D. Md. 2012.) They have done so by their common allegations that Defendants misclassified them as independent contractors instead of employees, resulting in minimum and overtime wage violations. To support these allegations, Plaintiffs have provided sworn declarations regarding the similar nature of their work as Lead Developers, copies of Homefix's Independent Contractor agreement, and Homefix's Noncompete agreement, under which Lead Developers are referred to as "employees," not independent contractors.

12

(*See* Homefix Custom Remodeling Independent Contractor Agreement, ECF No. 3-9; Noncompete Agreement ¶ 1, ECF No. 3-10.) These allegations suffice to establish that plaintiffs are "similarly situated" at the conditional certification stage. *See Montoya v. S.C.C.P. Painting Contractors, Inc.*, Civil No. CCB-07-455, 2008 WL 554114, at *3 (D. Md. Feb. 26, 2008) (granting plaintiffs' motion for conditional class certification because "the potential misclassification of the plaintiffs, in violation of FLSA's mandate that 'employee' be interpreted broadly, could be enough for class certification.")

Third and finally, Plaintiffs' race discrimination claim does not preclude finding that Plaintiffs, who are all African-American, are similarly situated for the purposes of conditional certification.   Plaintiffs' wage and hour claims under the FLSA (Count I) are distinct from Plaintiffs' claim under 42 U.S.C. § 1981 (Count VIII). (2d Am. Compl, ECF No. 37.) It may be the case that there are white putative class members who opt-in to the FLSA collective action, but those facts cannot be determined at this early stage without the benefit of notice and discovery. Thus, Defendants' concern that "when a putative opt-in with a wage claim is also white, this race-discrimination claim will not be applicable to him or her," is more appropriately addressed following discovery, when the court engages in a more stringent inquiry to determine whether the plaintiff class is "similarly situated" in accordance with the requirements of Section 216 of the FLSA. *See Rawls v. Augustine Home Health Care, Inc.*, 244 F.R.D. 298, 300 (D. Md. 2007) (internal citations omitted).

In sum, Plaintiffs' four declarations consistently allege underpayment and unpaid overtime.  Plaintiffs' declarations consistently attest that Defendants had the authority to control, manage, and direct the Plaintiffs' and other similarly situated employees' work.

Plaintiffs also uniformly contend that Defendants required Plaintiffs to attend trainings and pre-shift meetings every day, and required Plaintiffs to work additional events and trade shows on the weekends. Finally, Plaintiffs claim that they were subject to the same pay provisions and policies, which compensated Plaintiffs on the basis of the leads they generated. Accordingly, Plaintiffs have made the requisite showing that they and other employees were similarly situated as Lead Developers for Homefix and subject to the same alleged policy by Homefix of misclassifying Lead Developers as independent contractors that resulted in unpaid minimum and overtime wages.

### B. Scope of proposed action.

Alternatively, Defendants contend that if conditional certification is granted, the Court should clarify that, in addition to "individuals who performed work to generate leads or pitches for Homefix," the proposed class consists of "[i]ndividuals who work or worked in excess of 40 hours in a seven day workweek and did not receive compensation, [or] who were paid less than $7.25 an hour." (*See* Defendants' Proposed Notice, ECF No. 18-1.) Plaintiffs do not dispute that the only individuals eligible to join as plaintiffs are those that allege minimum wage or overtime violations. (ECF No. 25 at·14.) While Plaintiffs have agreed to add this language under the section "Who Can Join the Lawsuit," to avoid any confusion, the Court will include this language in its definition of the class.

Defendants also contend that the proposed class should be limited to Lead Developers who worked for Defendants three years prior to this Court's order granting conditional certification, i.e. March 6, 2020, as opposed to three years prior to the date this lawsuit was filed. Plaintiffs agree to this request. (ECF No. 25 at 12 n.4.) Accordingly, the Court will

limit the scope of the class to only those **individuals who assert minimum wage or overtime claims and who worked for Defendants three years prior to this Court's order granting conditional certification, i.e. after March 6, 2017.**

### C. Definition of the class.

For the reasons stated above, Plaintiffs' Motion will be granted in part and this Court will conditionally certify a collective action consisting of **all individuals who assert minimum wage or overtime claims and who work or worked to generate leads or pitches for Homefix Custom Remodeling Corporation, a/k/a Homefix Corporation at any time from March 6, 2017 to the present.**

### D. Notice form.

Pursuant to the FLSA, a Notice of Collective Action "must provide accurate and timely notice to potential plaintiffs so they may make informed decisions about whether to join a collective action." *Arnold v. Acappella, LLC*, BPG-15-3001, 2016 WL 5454541, at *4 (D. Md. Sept. 29, 2016). However, "[t]he district court has broad discretion regarding the 'details' of the notice sent to potential opt-in plaintiffs." *Id.* (citing *Mcfeeley v. Jackson St. Entm't, LLC*, DKC 12-1019, 2012 WL 5928902, at *5 (D. Md. Nov. 26, 2012); *see also Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 171, 110 S. Ct. 482, 487, 107 L. Ed. 2d 480 (1989). Because Plaintiffs have met their preliminary burden to show that there are other similarly situated employees, notice will be provided to all individuals who work or worked to generate leads or pitches for Homefix Custom Remodeling Corporation, a/k/a Homefix Corporation at any time from March 6, 2017 to the present. While the parties have made efforts to reconcile several of their disagreements as to the contents of the proposed Notice of Collective Action form, several

15

issues regarding the proposed Notice remain unresolved. The Court's determinations on these issues are addressed in turn below.

### 1. Contact information of putative plaintiffs.

Defendants assert that they should only be required to provide the names and last known mailing addresses of potential plaintiffs, and that contact via telephone or email is not appropriate. These requested notice procedures are clearly outdated, as is evident from the abundant authority in this District. *See Arnold v. Acappella, LLC*, BPG-15-3001, 2016 WL 5454541, at *4 (D. Md. Sept. 29, 2016) ("This court has recognized that e-mail communication is 'now the norm' and in numerous cases has directed FLSA defendants to produce such information." (quoting *Calder v. GGC-Baltimore, LLC*, No. BPG-12-2350, 2013 WL 3441178, at *3 (D. Md. July 8, 2013)); *Mendoza v. Mo's Fisherman Exchange, Inc.*, No. X, 2016 WL 3440007, at *20 (D. Md. June 22, 2016) (only requiring the defendants to provide email addresses because "'communication through email is [now] the norm'" (quoting *Butler v. DirectSAT USA, LLC*, 876 F. Supp. 2d 560, 566 (D. Md. 2012)). In keeping with this Court's previous notice procedures, within fifteen days, Defendants are directed to provide Plaintiffs with the names and last known home and email addresses of all collective action members. *See Jones v. Fidelity Resources, Inc.*, Civil Action No. RDB-17-1447, 2018 WL 656438, at *4 (D. Md. Feb. 1, 2018).

### 2. Opt-in Period

Plaintiffs request an opt-in period of 90 days while Defendants request a 35-day opt-in period. Ninety days is the "standard" notice period for potential plaintiffs to opt-in, and Defendants have not provided a "persuasive basis to deviate" from this period. *See Mendoza v. Mo's Fisherman Exchange, Inc.*, Civil Action No. ELH-15-1427, 2016 WL 3440007, at *20 (D.

Md. June 22, 2016) (citing *Butler*, 876 F. Supp. 2d at 575). Accordingly, the opt-in period for potential plaintiffs will be 90 days.

### 3. Posting of the Notice

In light of Plaintiffs' allegations that Lead Developers are required to report to physical Homefix worksites and that some Lead Developers may not have mailing addresses or email addresses, physical posting of the notice at Homefix worksites is appropriate. *See, e.g., Randolph v. PowerComm Const., Inc.*, 7 F. Supp. 3d 561, 577 (D. Md. 2014) (ordering physical posting at construction worksites); *Williams v. ezStorage Corp.*, Civil Action No. RDB-10-3335, 2011 WL 1539941, at *5 (D. Md. Apr. 21, 2011) (ordering physical posting at ezStorage facilities).

### 4. Issuance of Reminder Notice

This Court finds that a reminder notice is not necessary as such notices have the potential to "stir up litigation." *Calderon v. Geico General Ins. Co.*, No. RWT 10cv1958, 2011 WL 98197, at *8 (D. Md. Jan. 12, 2011). Plaintiffs have been given the standard 90-day period for potential plaintiffs to opt-in, along with the ability to post the notice at Defendants' worksites. The Court is satisfied that these procedures will be sufficient to notify potential class members of their ability to opt-in. Accordingly, Plaintiffs are not authorized to issue a reminder Notice.

**The parties shall confer and submit a joint proposed notice consistent with these determinations, within seven (7) days of the date of this Memorandum Opinion and Order.**

## II.    Motions to Dismiss

On June 19, 2019, Defendant Homefix filed a Partial Motion to Dismiss Plaintiffs'

Class and Collective Action Complaint. (ECF No. 14.) On July 3, 2019, Plaintiffs filed an

Amended Complaint. (ECF No. 19.) On August 1, 2019, Defendant Homefix filed a Partial

Motion to Dismiss Plaintiffs' First Amended Class and Collective Action Complaint. (ECF

No. 26.) In both of its Motions, Defendant Homefix sought to dismiss only Plaintiffs' claim

for race discrimination under 42 U.S.C. § 1981 (Count VIII). (ECF Nos. 14, 26.)

On February 12, 2020, this Court, with Defendants' consent, granted Plaintiffs' Motion

to Amend the Amended Complaint. (ECF No. 36.) The Second Amended Complaint, filed

on February 13, 2020, "add[ed] newly discovery facts relating to Defendant's illegal racial

discrimination against Plaintiffs and others similarly situated in violation of 42 U.S.C. § 1981."

(ECF No. 37 at 2 n.2.) Count VIII in the Second Amended Complaint is identical to Count

VIII in the First Amended Complaint (ECF No. 19) and the original Complaint (ECF No. 1).

Accordingly, Defendant Homefix's Partial Motion to Dismiss Plaintiffs' Class and Collective

Action Complaint (ECF No. 14) will be denied as moot, and the Court will consider

Defendant Homefix's Partial Motion to Dismiss Plaintiffs' First Amended Class and

Collective Action Complaint (ECF No. 26) as applied to Plaintiffs' Second Amended

Complaint (ECF No. 37).[3] For the reasons stated below, Defendant Homefix's Motion (ECF

No. 26) will be denied.

---

[3] Typically, an amended pleading supersedes the earlier pleading and "renders it of no further legal effect." *Buechler v. Your Wine & Spirit Shoppe, Inc.*, 846 F. Supp. 2d 406, 414 (D. Md. 2012) (citing *Young v. City of Mt. Rainier*, 238 F.3d 567, 572 (4th Cir. 2001)). Yet, as this Court has explained, "[d]efendants should not be required to file a new motion to dismiss simply because an amended pleading was introduced while their motion was pending." *Buechler*, 846 F. Supp. 2d at 415. Accordingly, rather than have Defendant Homefix file a third Motion to Dismiss the same claim (Count VIII), the Court will apply Defendant Homefix's Partial Motion to

## A. Standard of Review

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The United States Supreme Court's opinions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "require that complaints in civil actions be alleged with greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). In *Twombly*, the Supreme Court articulated "[t]wo working principles" that courts must employ when ruling on Rule 12(b)(6) motions to dismiss. *Iqbal*, 556 U.S. at 678. First, while a court must accept as true all factual allegations contained in the complaint, legal conclusions drawn from those facts are not afforded such deference. *Id.* (stating that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *see also Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) ("Although we are constrained to take the facts in the light most favorable to the plaintiff, we need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." (internal quotation marks omitted)).

Dismiss Plaintiffs' First Amended Class and Collective Action Complaint (ECF No. 26) to Plaintiff's Second Amended Complaint (ECF No. 37).

Second, a complaint must be dismissed if it does not allege "a plausible claim for relief." *Iqbal*, 556 U.S. at 679.

### B. Discussion

Plaintiffs pursuing a claim of race discrimination under 42 U.S.C. § 1981 may proceed under either the burden-shifting scheme set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) or "through direct evidence" of discrimination. *Strothers v. City of Laurel*, 895 F.3d 317, 327 (4th Cir. 2018). Here, because Plaintiffs allege direct evidence of discriminatory conduct by Defendants, the Court need not apply the *McDonnell Douglas* burden-shifting framework to Plaintiffs' claim.

To prevail on a discrimination claim through direct evidence, a plaintiff must show "evidence of conduct or statements that both reflect directly on the alleged discriminatory attitude and that bear directly on the contested employment decision." *Gott v. Town of Chesapeake Beach, Md.*, 44 F. Supp. 3d 610, 615 (D. Md. 2014) (quoting *Johnson v. Mechs. & Farmers Bank*, 309 Fed. App'x 675, 681 (4th Cir. 2009). A plaintiff must also show a "nexus between the discriminatory statements and the employment action." *Id.* At the motion to dismiss stage, "[d]ismissal is appropriate if the complaint fails to allege any facts that might support an inference that the defendant intentionally discriminated against plaintiff because of color or national origin." *Onawaola v. Johns Hopkins University*, 412 F. Supp 2d 529, 533 (D. Md. 2006) (citing *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003)).

The Court is satisfied that Plaintiff has stated a claim for racial discrimination under 42 U.S.C. § 1981. Plaintiffs allege that Defendants intentionally discriminated against them based on their race, African-American, by "directing them to perform their marketing duties

targeting homeowners in predominantly non-white neighborhoods, while directing their white counterparts to target homeowners in predominantly white neighborhoods." (2d Am. Compl. ¶ 232, ECF No. 37.) At the pre-shift meetings, Plaintiffs allege that the Individual Defendants directed white Lead Developers to canvass the predominantly white neighborhoods and African-American Lead Developers to canvass the predominantly African-American neighborhoods. (*Id.* ¶ 140.) When Plaintiff Baylor asked to canvass in a predominantly white area of Ashburn, Virginia, Defendant Sinnott allegedly objected, stating "why would you send a bunch of Black guys [there]?" (*Id.* ¶ 142.) Another African-American employee who was not a Lead Developer was allegedly told by Defendant Sinnott to "recruit Lead Developers only from 'neighborhoods' where you can fit in, like strip malls, the black neighborhoods.'" (*Id.* ¶ 144.)

Plaintiffs also allege that Defendants segregated Lead Developers at trade shows, requiring white Lead Developers and African-American Lead Developers to staff separate kiosks, assigning white Lead Developers to "kiosks in more visible and highly trafficked areas" and assigning African-American Lead Developers to "smaller, less preferential kiosks." (*Id.* ¶¶ 151-153.) Finally, Plaintiffs allege that Defendants' conduct resulted in higher earning potential and higher actual earnings for white Lead Developers than for African-American Lead Developers. (*Id.* ¶ 150.) Defendants' alleged conduct of intentionally and purposefully separating African-American Lead Developers from white Lead Developers, resulting in potentially higher commissions for white Lead Developers, clearly presents a prima facie case of racial discrimination. *See Bunch v. Shalala*, 67 F.3d 293 (Table), 1995 WL 564385, at *5 (4th

Cir. Sept. 25, 1995) ("Discriminatory job assignments to a certain department or work area are forbidden" under federal employment law).

In sum, Plaintiffs have adequately pled a prime facie case of race discrimination under 42 U.S.C. § 1981. Accordingly, Defendant Homefix's Partial Motion to Dismiss Plaintiffs' First Amended Class and Collective Action Complaint (ECF No. 26), applied to Plaintiffs' Second Amended Complaint (ECF No. 37), is denied.

## CONCLUSION

For the reasons stated above, Plaintiffs' Motion for Conditional Collective Action Certification and Court-Facilitated Notice (ECF No. 3) is GRANTED IN PART and DENIED IN PART. Specifically, it is GRANTED as to the conditional certification of a class consisting of "**all individuals who assert minimum wage or overtime claims and who work or worked to generate leads or pitches for Homefix Custom Remodeling Corporation, a/k/a Homefix Corporation at any time from March 6, 2017 to the present.**" The Motion is further GRANTED IN PART and DENIED IN PART as to the contents and manner of the proposed Notice. The parties shall be directed to confer and submit a joint proposed notice consistent with the determinations set forth herein. Defendants are directed to provide Plaintiffs with the names and last known home and email addresses of all collective action members.

Defendant Homefix Custom Remodeling Corporation's Partial Motion to Dismiss Plaintiffs' Class and Collective Action Complaint (ECF No. 14) is DENIED AS MOOT and Defendant Homefix Custom Remodeling Corporation's Partial Motion to Dismiss Plaintiffs' First Amended Class and Collective Action Complaint (ECF No. 26), applied to Plaintiffs'

Second Amended Complaint (ECF No. 37), is DENIED.

A separate Order follows.

Dated:  March 6, 2020

_____
Richard D. Bennett
United States District Judge